## BALDWIN *against* NORTON and others.

*New-Haven,*
June, 1817.

THIS was a bill in chancery for a foreclosure of mortgaged premises.

The bill stated the following case. On the 10th of *May,* 1808, one *Horace Baldwin* being indebted to *Ashbel Baldwin,* the plaintiff, in the sum of 500 dollars, gave him a promissory note for that sum, payable on demand with interest, and secured the same by the mortgage of a piece of land in *Litchfield,* worth about 2000 dollars. This land was, at that time, under the incumbrance of a prior mortgage from *Horace Baldwin* to *Timothy Leonard,* to secure the payment of a note of 1739 dollars. On the 13th of *May* 1811, *Horace Baldwin,* by a quit-claim deed, conveyed to *Leonard* all his right in the premises; and *Leonard* gave up to *Horace Baldwin* the last mentioned note. On the 22d of *November* following, *Leonard* conveyed all his interest in the premises to *Birdseye Norton,* one of the defendants; and afterwards, on the same day, took back from him a mortgage deed of the same property, to secure the payment of about 2,400 dollars. Subsequent to these transactions, *Leonard* died at *Lansingburgh,* in the state of *New-York,* having made a will, and appointed six persons executors, and leaving a widow, and six children, most of whom were minors.

The bill prayed, that unless *Horace Baldwin, Norton,* and the widow, children and executors of *Leonard,* or some, or either of them, should pay the plaintiff, within such time as the court should deem meet, the amount due on said note of 500 dollars, with interest and costs, they, and each of them, should be foreclosed from all right to redeem the premises.

*Horace Baldwin* and *Norton* were made parties to the bill, by personal citation; and notice was given of the pendency of the suit, pursuant to an order of the court, to the widow, children and executors of *Leonard,* by a publication, in the usual form, in a news-paper printed at *Lansingburgh.* A guardian *ad litem* was appointed, by the court, to the minor children.

*A.* being indebted to *B.,* by note, mortgaged land to him as security, and afterwards mortgaged the same land to *C.* as security for a debt to him; *A.* then released his equity of redemption to *B.,* and *B.,* in consideration thereof, gave up his note against *A.* Held, that *C.* was not entitled to foreclose *B.,* without paying off the first incumbrance.

Where a second mortgagee, on an application in chancery, for a foreclosure, wishing to avoid a prior mortgage, offered evidence of usury in that mortgage, without having made any allegation of usury in his bill, and without having given notice that he should offer such evidence; it was held, that the evidence was inadmissible on the former ground.

It is no ground for a new trial in a suit in chancery, that other persons, who might be affected by the decree, were not made parties:—by one Judge, the others being silent on the point.

On the hearing of this cause before the superior court, on the general answers of the defendants, denying the allegations in the bill, it was proved, that on the 19th of *March* 1807, *Horace Baldwin* being indebted to *Leonard* in the sum of 1739 dollars, gave him a note for that sum, and mortgaged the premises to him as security, being the prior incumbrance referred to in the plaintiff's bill ; that *Horace Baldwin* failed to perform the condition of his mortgage deed to *Leonard,* whereby the legal title, if that deed was valid, became absolute in *Leonard ;* that *Horace Baldwin,* on the 13th of *May* 1811, executed a quit-claim deed of the premises to *Leonard,* as stated in the plaintiff's bill ; and that, in consideration thereof, and for no other cause or consideration, *Leonard* gave up to *Horace Baldwin* his note of 1739 dollars, which has been no otherwise paid.

The plaintiff claimed, and offered evidence to prove, that *Horace Baldwin's* note to *Leonard* was given on an usurious consideration. To the admission of this evidence, the defendants objected, because no previous notice had been given by the plaintiff, that any attempt would be made by him to prove such usury. The court overruled the objection, and admitted the evidence, and thereupon found the note in question to be usurious.

Upon these facts the court granted the prayer of the bill, and passed a decree of foreclosure, in the usual form. The defendants moved for a new trial ; and the questions arising on such motion were referred to the nine Judges for their advice.

*Bacon,* in support of the motion, contended, 1. That the executors of *Leonard* ought to have been made parties to the bill, and to have been cited in.

2. That evidence of usury ought not to have been received, in contradiction to the plaintiff's own statement, to impeach the mortgage to *Leonard ;* especially, as no previous notice was given that such evidence would be offered.

3. That if such usury existed, and was properly proved, the plaintiff, who seeks equity, can claim only to have the excess of interest stricken out.

4. That the plaintiff is not entitled to a decree of foreclosure against *Leonard,* the first mortgagee, having the legal

title, and being assignee of the equity of redemption, without paying the amount of his incumbrance.

*N. Smith* and *Sherman,* contra.

SWIFT, Ch. J. The principal question in this case, is, whether the plaintiff is entitled to the land in question, without paying the money for which it was mortgaged to *Leonard?*

It is contended, on the part of the plaintiff, that the debt has been paid and satisfied ; and that he is not bound to pay it, to entitle him to a decree of foreclosure. There is no doubt, if *Horace Baldwin* had paid the money to *Leonard* on the note, that the mortgage would have been discharged, and the plaintiff would have been entitled to the land, without paying it. But it appears from the facts stated, that there was no payment of the note, otherwise than by the land mortgaged to secure it. It appears, that *Horace Baldwin* released to *Leonard* his ultimate right to redeem, and in consideration of this, *Leonard* gave up the note. The operation of this transaction, is merely the taking of the pledge for the debt. This could not discharge the land from the lien ; for it would be equally inconsistent and inequitable to say, that the taking of the pledge for the debt, should exonerate the pledge from the debt.

It is said, that the giving up the note for which the land was mortgaged as collateral security, discharges the lien upon the land. But this is no more than adjusting the claims between the first mortgagee and the man who has the ultimate equity of redemption : it is only relinquishing a legal remedy on the note ; it is no payment of it : and the discharge of a right of action at law on the note, will not discharge the land pledged to secure it, without actual payment. Suppose the first mortgagee should suffer the debt to lie, till barred by the statute of limitations ; this would not exonerate the land from the lien. There must be a payment of the debt, by something besides the thing pledged to secure it ; otherwise, there is no satisfaction of the mortgage.

In this case, the defendant, *Norton,* has the legal title to the land sought to be foreclosed : he has acquired the ultimate equity of redemption : he has no security for a debt secured by a prior mortgage on the land, but the land itself.

The plaintiff is a second mortgagee, having no legal title: he has only an equitable right to redeem. He now comes to a court of equity, praying to have the land, without paying the prior debt, because the defendant has given up the legal remedy to recover it. But equity looks at the *substance,* and not at the *form.* There is precisely the same reason why the defendant should hold this land till his debt is paid, as if he held the note; and to grant the prayer of this bill would be to take land from a man who has the legal title, and a prior equitable claim, and give it to one who has only a subsequent claim. A court of equity, then, will consider the taking of the mortgaged premises for the debt, and relinquishing the legal remedy, as no discharge of the lien; but the debt remains an incumbrance on the land against all subsequent mortgagees; otherwise, the most manifest injustice may be done: for if the land be only of the value of the first debt, then the first mortgagee would lose his whole debt. But on the other ground, no injustice can be done. If the mortgaged premises are of greater value than the debt, the second mortgagee can redeem.

In the case under consideration, the plaintiff has now the same rights as if the defendant had never settled with *Horace Baldwin.* He may redeem, upon paying the prior incumbrance; and if the land be worth more than the debt, he can hold it till that and his own debt are paid. But, if the land is worth no more than the first debt, then to admit him to take the land, without paying it, would be to enable him to cheat the first mortgagee out of his debt.

As to the usury, there is no allegation of the fact in the bill; of course, it was improper to admit evidence to that point; and it may be laid out of the question.

I am of opinion, that a new trial ought to be granted.

TRUMBULL, J. was of the same opinion.

EDMOND, J. *Horace Baldwin,* being owner of the land in question, to secure the payment of 1739 dollars, on the 19th day of *March* 1807, mortgaged the same to *Timothy Leonard. Horace Baldwin,* being indebted to *Ashbel Baldwin,* the plaintiff, on the 10th day of *May,* 1808, mortgaged the premises to him. On the 13th day of *May* 1814, *Horace Baldwin* quit-claimed to *Leonard* all his right and title to the

*New-Haven,*
June, 1817.

Baldwin
*v.*
Norton.

land, and took up his note. *Leonard,* on the 22d of *November* 1811, conveyed the premises to *Norton,* by deed; and, to secure the purchase money, took a mortgage from him. The plaintiff, *Ashbel Baldwin,* the second mortgagee, asks a foreclosure against the defendants, on their failure to pay the sum now remaining due to him, within such time as the court shall limit; or such relief generally as the court are authorised to grant.

On examination into the merits of this bill, the court found, that the contract between *Horace Baldwin* and *Leonard,* to secure the fulfilment of which, the note and mortgage were given to him, was usurious and void. The court also found, that the claim of *Leonard,* on *Horace Baldwin,* was in fact paid.

To this finding it is objected, that evidence of usury was inadmissible: that the plaintiff having in his bill stated and admitted, that there was a debt due to *Leonard,* and that to secure that debt, a mortgage was given prior to the one given to himself; he is not at liberty to contest its validity.

In answer to this objection, it may be observed, that all the notice which a subsequent mortgagee can be presumed to have of a previous mortgage, or lien on the land, is that which is derived from the record. He can only state prior incumbrances as they there appear; and if he comes to redeem or foreclose, will it be said, that before he can be entitled to a decree, the plaintiff is, at all events, bound to pay the whole amount for which the land was originally pledged, taking the record as the only evidence, or conclusive evidence, on that point, in exclusion of other evidence, that the debt or debts for the security of which the prior mortgage was given, have been satisfied, in whole, or in part? Certainly not. The enquiry is necessary to the attainment of justice. No subsequent mortgagee is bound to know, or to state in his bill the precise amount of outstanding claims, (his own excepted.) It can be known with certainty only from testimony to be introduced on the trial; testimony as to what was the actual amount, or *purpose,* for which the land was pledged; what has been since paid; and what, if any thing, remains due. In short, the actual state of things, between the mortgagor and first mortgagee, in relation to the lien of the latter on the land, must be brought into view, and ascertained from testimony in court. If, then, on such enquiry

into the nature and amount of the original debt or claim, counted upon in the first mortgage, it should appear to the court, that the first mortgage was fraudulent; that no debt existed; or that the contract, on which the mortgage was predicated, was corrupt, usurious and void; I can discover no good reason for excluding such testimony, any more than there would be for excluding testimony to prove that the claim counted upon in the first mortgage was in fact satisfied, either in the whole, or in part.

Another objection to the admission of testimony to prove usury, is, want of previous notice, that such testimony would be offered.

I know of no rule that requires notice in such a case. A plaintiff cannot foresee the claim or defence, that may be set up by the defendant, before trial; or what reply the defence or claim of the defendant may require.

It is also objected to the finding of the court, that there was no evidence before the court of any payment by *Horace Baldwin* to *Leonard*, other than the giving the quit-claim on one side, and giving up the note on the other; that this transaction was nothing more than an attempt, on the part of *Leonard*, to strengthen his security by purchasing in the ultimate equity from *Horace Baldwin*, and does not warrant the inference, that it was a payment of the debt to *Leonard*, as found by the court.

In considering this question, I cannot but view the transaction respecting the quit-claim and giving up the note, as standing on the same ground, and producing the same effect, both in law and equity, that it would have done, had *Horace Baldwin* paid to *Leonard* the full amount of his demand in money, or any other equivalent, and taken up his note, and *Leonard* had then paid the same money to *Horace Baldwin*; and, in consideration of the money so paid, the latter had quit-claimed the farm to *Leonard*. And there can, as far as I have been able to discover, be no possible difference in the two cases, unless the idle ceremony of handing over the money, that the money might be handed back, should be considered as essential to the contract. The result of this mode of doing the business could be nothing more nor less than what was effected by the mode adopted by the parties. *Before* this transaction, *Leonard* had a right to collect his money (admitting the claim to be just) of *Horace Baldwin*

upon the note ; or, if he chose, to foreclose both *Horace* and *Ashbel Baldwin* of their equity to redeem, on their failure to satisfy his debt. Either might destroy his mortgage title, by paying the money due to him. *Horace Baldwin* had a right to redeem from *Leonard* and *Ashbel Baldwin*, and was liable to be sued by either; to be foreclosed by *Leonard* of his equity to redeem against *Leonard*, on failure to pay his debt ; and to be foreclosed by *Ashbel Baldwin* of his equity to redeem, on his failure to pay him. *Ashbel Baldwin* had a right to sue his note against *Horace Baldwin*, or to foreclose him for non-payment. He might also redeem from *Leonard*, on paying his demand, and then foreclose *Horace Baldwin*, on his failure to pay both debts. *After* the transaction, relative to the quit-claim and note, on the 13th *May*, the relative rights of the parties were materially varied. It can scarcely be worth while to remark, that, as this was a transaction in which *Ashbel Baldwin* had no part, though his rights are not to be impaired by it, yet he may derive a fair advantage from it in point of security for his debt, in the same manner that every subsequent mortgagee is benefited when the mortgagor cancels the whole or part of a debt secured by a prior mortgage. By giving the quit-claim by *Horace Baldwin*, and the acceptance of it by *Leonard*, and delivering up the note, the relation of debtor and creditor, which before existed between them, ceased, and with the debt, in equity the lien created by the mortgage to secure the payment of that debt, terminated. *Leonard* parted with all demands on *Horace Baldwin*, and with all power to *foreclose Ashbel Baldwin*; and in exchange, he received from *Horace Baldwin* a quit-claim, by virtue of which he acquired a *right to redeem from Ashbel Baldwin* on payment of the money due him, and to secure to himself a valid and indefeasible title ; and subjected himself to be foreclosed, by *Ashbel Baldwin*, of his right of redemption acquired from *Horace Baldwin*, in the same manner that the latter might have been foreclosed before the transfer. Had the object of *Leonard* been to strengthen his security only, he would have retained his note. Was it to obtain a title to the farm at all events, he could not have devised a more effectual method. By obtaining the ultimate equity, he could never be ousted of the title, without suffering a foreclosure. Whether this was a provident bargain on the part of *Leonard*, or of *Horace*

*Baldwin,* it is not necessary to decide. Where there is neither complaint nor evidence, it is not to be presumed that that the parties were incompetent to take care of their respective interests. The land may have been of greater value at the time of sale, than the debts due on both mortgages. If more, or even as much, the ultimate equity must have been equivalent to the note cancelled ; and the debt due *Ashbel Baldwin,* the plaintiff, over and above ; but whether more or less will not vary the effect of the contract.

It has been suggested, that the plaintiff ought to have brought his bill to redeem, and not to foreclose.

In every case where the ultimate equity and a prior mortgage title are united in the same person, in my opinion, it is proper for a subsequent mortgagee to proceed by a bill for foreclosure ; otherwise, he may be under the necessity, after having redeemed, to have recourse to a second bill against the same defendant to foreclose, before he can avail himself of his mortgage, and quiet his title ; a process, too dilatory and expensive, for a court of chancery unnecessarily to sanction ; and especially, in a case where every right of the parties may as well be ascertained and settled by a single application and decree.

The objection, that *Leonard* being first *mortgagee,* is entitled to an election whether he will receive his money, before he can be subjected to the payment of a further sum, or a foreclosure, is easily answered. If the finding of the court was correct, he made his election when he took the quit-claim from *Horace Baldwin,* and parted with his note.

From these considerations, I am satisfied, that a bill to foreclose, was the proper remedy ; that the evidence of usury was admissible ; that there is no rule which requires previous notice, in such a case, that such evidence will be offered on the trial ; and that the facts admitted and proved in the case, warrant the finding of the court, both in respect to the usury, and the satisfaction of *Leonard's* debt.

I have taken no notice of *Norton* and others, because as grantees under *Leonard,* they have only such rights as he had to convey.

I see no sufficient ground for a new trial.

SMITH, J. was of the same opinion.

BRAINARD, J. concurred in the opinion given by Ch. J. Swift.

BALDWIN, J.   The plaintiff states the prior incumbrance to *Leonard,* and that his debt has been paid.   The motion states, that it was paid by a quit-claim of *H. Baldwin's* equity of redemption, in consideration of which the note was given up, and in no other manner.   And the question thereupon arises, whether this mode of payment supports the allegation in the bill, and the finding of the court.

It seems to be admitted, that if *H. Baldwin* had paid to *Leonard* in money the amount of his debt, and taken up the note, such payment would have discharged the mortgage, and let in *Ashbel Baldwin* to a direct lien upon the property, unencumbered by the former mortgage ; and that a court of chancery would, in such case, decree a foreclosure in his favour, notwithstanding the legal title of *Leonard,* and that *A. Baldwin* had only a mortgage on the equity of *H. Baldwin.*   It is material, then, to enquire, whether *Leonard's* debt has, in fact, been paid ; or whether the transaction, as agreed, amounts to a discharge of his lien.

It is not necessary to the discharge of a debt, that payment should be made in money : other property may, by the agreement of the parties, be received in satisfaction.   *H. Baldwin* held the equity of redemption, encumbered with the mortgage to *A. Baldwin.*   It appears to have been agreed between the parties, that *H. Baldwin* should quit-claim his interest in the property to *Leonard ;* and that *Leonard,* in consideration thereof, should give up to *H. Baldwin,* to be cancelled, the note which is the basis of *Leonard's* mortgage. This was done.   What, then, is the situation of the parties ? The evidence of the debt, for the security of which the mortgage was made, is given up.   The debt can never be enforced ; the mortgage is at an end ; and, in lieu of it, *Leonard* received the land itself, encumbered with the lien of *A. Baldwin.*

That *Leonard* preferred the title under *H. Baldwin's* quitclaim to his mortgage, is evident from the fact, that he gave up the note which alone supported his mortgage.   He no longer treated his interest as a mortgage.   He sold the estate as his unconditional property, for a sum sufficient to cover both debts.

I am aware, that the legal estate had vested in *Leonard* before the quit-claim from *H. Baldwin ;* but this cannot affect the claim of the plaintiff in a court of equity, which regards the *substance* unfettered by *forms.*

It appears to me, that the facts stated in the motion, support the finding of the court ; and that there ought not to be a new trial.

GODDARD, J.   The defendants claim a new trial on three grounds.

First, because the proper parties were not before the court, to enable it to do justice upon the facts found in the decree.

Secondly, because the court admitted evidence of usury in the mortgage deed from *Horace Baldwin* to *Timothy Leonard,* without any notice having been previously given of an intention to offer such evidence.

Thirdly, because the court considered the execution of a release deed of the equity of redemption by *Horace Baldwin* to *Timothy Leonard,* and his giving up the note secured thereby, as payment of that note, and as disencumbering the estate of *Leonard's* mortgage.

The first claim is sufficiently answered, by saying, that whatever might have been the merits of that objection, the defendants cannot take advantage of it here.   They ought to have pleaded in abatement, the want of proper parties ; or, according to our practice, suggested this defect before the trial, and the court would have caused the proper parties to be added and notified.

Upon the second ground, the case states, that the court admitted evidence of usury in the consideration of the mortgage deed from *Horace Baldwin* to *Timothy Leonard.*   The judges were, probably, misled, by the manner in which the objection was presented to them.   It was, to the admission of evidence of usury, without previous notice.   This not being a case, in which, by the rule on that subject, notice is required, the court admitted the evidence.   But on examination of the bill, it contains no allegation that the deed from *Horace Baldwin* to *Timothy Leonard* was executed upon a usurious consideration.   It proceeds wholly on the ground, that the deed was originally valid, but had been satisfied, and the note which it was made to secure, given up.   No evidence, therefore, of usury, could have been given, with, or without.

New-Haven,
June, 1817.

Baldwin
v.
Norton.

notice. The case made by the plaintiff did not warrant it. The evidence, was, therefore, illegally admitted ; and although I presume it had no influence in the ultimate decision of the cause ; yet I know not that I can legally so presume. The court found the mortgage to be satisfied, and decreed, that the title of the defendants should pass to the plaintiff. Considering it as of importance, that questions of evidence should be correctly settled, and not knowing, that evidence which the counsel for the plaintiff thought fit to offer, and the court to admit and hear, had no influence upon the decision of the cause, I should incline to the opinion, that a new trial ought to be granted on this ground. But this has become of less importance, in my opinion, because I think the decree wrong upon the third objection to it.

The decree proceeds on the ground, that the mortgage deed from *Horace Baldwin* to *Timothy Leonard*, was satisfied, the note given up, and the estate disencumbered of that debt. But how was this accomplished ? Solely by the execution of a release deed from the mortgagor to the first mortgagee of his remaining equity of redemption. No contract is stated, found, or claimed, that *Timothy Leonard* agreed to take the estate, and pay off the second mortgage to the present plaintiff. This is expressly negated. The case states, that this debt was no otherwise paid, than by this release deed. I consider the transaction as standing on the same ground, and the parties remaining in the same situation, as they would have done, if the first mortgagee had preferred his bill to a court of chancery to foreclose the equity of redemption, without making the second mortgagee a party to it. If such bill had been granted, the second mortgagee could redeem, paying the debt due the first mortgagee. So he can now. His rights are not impaired, nor his condition, in relation to the estate, altered, by this transaction between the mortgagor and the first mortgagee. They have only voluntarily extinguished the equity of redemption, by their act, without the interference of a court of chancery. The mortgagor releases to the mortgagee, by deed, his right in equity to redeem the estate after paying both mortgages. The mortgagee accepts it, and gives up his note, as he ought to do ; and this is held to be a payment of his note,—a satisfaction of his mortgage. To my mind, this is a singular

*New-Haven,*
June, 1817.

Baldwin
*v.*
Norton.

result in a court of chancery, where the *substance*, and not the *form*, of a transaction is always regarded.

Adopt the other principle, and perfect justice will be done to all parties. *Ashbel Baldwin* can take the estate, paying off this debt with which the estate was onerated at the time when his deed was executed. He is in precisely the same situation that he expected to be in, and has precisely the same security that he expected to have, for the payment of his debt, when he took his deed. Let him pay that debt, and he can redeem, and hold the estate until he is repaid its amount, together with his own mortgage; and it must be wholly unimportant to him, whether the ultimate equity resides in the original mortgagor, or the present defendants.

I advise a new trial on this ground.

HOSMER, J. was of opinion, that a new trial ought to be granted on the last ground.

GOULD, J. The evidence of usury appears to have been clearly inadmissible; as usury was not complained of in the bill. And even if the evidence had been proper, and the fact proved, I do not perceive how the decree, as it stands, could be vindicated. For, according to the maxim, that he, who seeks equity, must do it, the relief should not have extended beyond the excess of legal interest. But, as it appears, that the evidence on this point did not ultimately influence the decree; it may, perhaps, be properly laid out of the case, on both sides.

Upon the main point,—that of priority,—the case appears to me, I confess, a very plain one against the plaintiff. The question is, simply, whether a party, having the legal title to mortgaged property, together with the ultimate right of redemption, can be postponed to a subsequent incumbrancer, having only an intermediate equity? One would hardly have thought it possible, to furnish an argument upon one side of this question, or to raise a doubt upon the other.

*T. Leonard,* the first mortgagee, on receiving the release of the mortgagor's equity of redemption, became, as between himself and the mortgagor, vested with the absolute title, though still liable to be redeemed by the plaintiff—from whom, however, he might himself afterwards redeem, as

*New-Haven*,
June, 1817.

Baldwin
*v*
Norton.

assignee of the ultimate equitable interest of the mortgagor. The defendants, then, who claim under *T. Leonard*, and hold, in several rights, all the interest, which he held, before his conveyance to *Norton*, have not only the legal title, but an equity both prior and subsequent to that of the plaintiff, opposed by his intervening equity alone.

But we are pressed with the argument, that, as the first mortgage debt is satisfied, the first incumbrance is, in equity, removed; and that the plaintiff has, therefore, acquired the equitable priority. It would be extraordinary, indeed, if a mortgagee, by the very act of extinguishing the mortgagor's title, should destroy his own. But to say, that the first incumbrance was *removed*, by *Leonard's* taking an assignment of the equity of redemption, and delivering up the mortgagor's notes to be cancelled, is to make a very incorrect use of language. It would be more proper to say, that the equitable interest, acquired by the assignment, was, as to *Leonard*, the first mortgagee, and those claiming under him (supposing no other incumbrance to exist,) *merged* in the legal title. For the only effect of the transaction, as to the question of title, was to *add* to the legal estate, which *Leonard* already held, the equitable interest, which, till that time, had remained in the mortgagor—or, as has been observed before, to render *Leonard's* title, as between himself and the mortgagor, *absolute*—leaving the rights of any mesne incumbrancer, precisely as they were before.

That the first mortgage debt has been satisfied, is not disputed : but that the first mortgagee's title in equity is, therefore, destroyed, would be a very strange conclusion : for the debt was satisfied only by the *land itself*—not by the equity of redemption merely, (for such a supposition would be replete with absurdity ;) but by the fee, or whole interest, subject only to the plaintiff's right to redeem. But, if the debt is paid, what difference, we are asked, does it make, whether it was satisfied by the land in mortgage, or by any other property ? Upon the question depending between these parties, the difference is total. If the payment had been made in other property, *Leonard*, or those claiming under him, could, in conscience, have no further claim upon the land, under his original mortgage ; and the legal title might, therefore, be taken from them, without any injustice. But, as the case is, to decree the title out of their hands, would

*New-Haven,*
June, 1817.

Baldwin
*v.*
Norton.

be to rescind the very payment, which, it is said, has, in equity, extinguished it : so that the precise effect of the decree in question, is, to take the title from the first incumbrancer, because his debt has been paid ; and, at the same time, to deprive him of what he has received in payment, because his title is gone.

To simplify the case, let it be supposed that there had been no second mortgage. Upon this supposition, the release given to *Leonard* would, unquestionably, have made the estate absolute in him. What, then, was the effect of the intervening mortgage to the plaintiff ? It could surely be no other, as against *Leonard*, than to *qualify* his absolute title, so far as to entitle the plaintiff to redeem of him. For the plaintiff, as second mortgagee, could acquire no other rights against the first, than the mortgagor originally had. The question, then, is, in principle, the same, as it would have been, if *H. Baldwin*, the mortgagor, after releasing his equity of redemption to *Leonard*, and taking up his notes, (there being no other incumbrance,) had brought a bill to foreclose *Leonard*, his own mortgagee—upon the ground, that the delivering up of the notes, on one side, and the release, on the other, had, in equity, reversed their original relation, and left in *Leonard* a bare right to redeem, on paying up the debt, originally due to himself. But such a claim could not endure a moment's discussion.

The suggestion, that this decree may lead, eventually, to the same result, as would be attained circuitously, by the plaintiff's first redeeming of *Leonard's* assignee, and the latter's afterwards redeeming of him, is nothing to the purpose. The result *may not* be the same : the property may not be equal, in value, to the aggregate of both the debts. But if it were of ten fold greater value, how can the party, holding the legal estate, be *compelled* to purchase the absolute interest, by satisfying subsequent claims ? Or rather, how can he be reduced to the compulsory alternative of making his title absolute, or of being postponed to a subsequent incumbrancer ? It seems to me plainly impossible, except by an absolute reversal of all the principles which regulate priority of title.

New trial to be granted.