NATHAN M. WATERMAN *vs.* JOHN J. CURTIS AND OTHERS.

A subsequent incumbrancer will not be allowed, on a petition to redeem mortgaged premises, to show usury in the debt of a prior incumbrancer, unless the usury, and the particular facts and circumstances constituting it, are set forth in the petition.

A party levying an execution upon an equity of redemption in real estate, is bound by the action of the appraisers as to the amount and validity of a prior incumbrance, and can not afterward, on a petition to redeem, show such incumbrance to be less than the valuation of the appraisers, or founded on an usurious contract.

A mortgagee in possession is entitled to charge the premises for personal services in renting them and collecting rents, and for such sums as were necessarily expended to obtain a speedy possession of the property.

THIS was a petition in chancery brought to the superior court for Hartford county, by Nathan M. Waterman, against John J. Curtis, Lewis Callender and the Hartford Savings Bank and Building Association, for the redemption of certain real estate. Curtis and Callender filed a cross bill for a foreclosure of the plaintiff. The cause was referred to a committee who found substantially as follows : In the year 1853, one John C. Pratt, being seized of certain real estate in Hartford, by three separate deeds mortgaged the same to the Hartford Savings Bank and Building Association, to secure three loans of money, each payable with interest and a monthly bonus in addition to the interest. Afterward in the same year, Pratt conveyed the north half of the premises to Joseph Sheldon by warranty deed, which half had on the same day been quit claimed by Sheldon to Pratt, and in September, 1854, Pratt mortgaged the same premises to John J. Curtis to secure a debt due to him. In October, 1854, Pratt, being the owner of ten shares of stock of the Savings Bank and Building Association on which they had a lien for the payment of their loans, transferred the same to Lewis Callender to secure the payment of $300, but the transfer was never entered on the books of the association. In April, 1855, the Savings Bank and Building Association obtained a decree of foreclosure of said premises and stock against the said Pratt, Curtis, and Callender. Pratt failed to redeem, and Curtis and Callender, before their equity was extinguished, paid the debt and costs to the association, receiving a quitclaim deed of the premises and a transfer of the stock which was then worth $294.60. Pratt had paid the association $225.75 interest and $332 bonus on his loans. Curtis and Callender mortgaged the premises back to the Savings Bank and Building Association. In November, 1854, the petitioner brought his action against Pratt and others and attached all the interest of Pratt in the premises. He afterward obtained judgment for $403.89 and costs of suit, took out execution therefor and levied the same upon Pratt's equity of redemption in the premises, which was valued by the appraisers on the execution at $71.72, they finding due

from Pratt to the Hartford Savings Bank and Building Association, deducting the stock, $1,759, and to Curtis $669.28. The remainder of the judgment of the petitioner had never been paid. The petition alleged " that the interest of said Pratt in said property when attached was greater than it was appraised when set off on the execution, and sufficient to pay his whole debt, but contained no other allegation of usury. The superior court found $2,775.40 due to Curtis and Callender, and decreed that the petitioner redeem on payment of that sum with costs, and in default thereof be foreclosed. In ascertaining that sum the court allowed the defendants the sums paid to the Hartford Savings Bank and Building Association, including the interest of $225.75 and the bonus of $332, which were usurious; also the sum of $35 for personal services in renting the premises and collecting rent, and $50 which the respondents had been compelled to pay to Joseph Sheldon to obtain possession of the north half of the property. The ten shares of stock of the building association were applied to Lewis Callender's debt of $300, which they were assigned to secure.

The petitioner brought the record before this court by motion in error.

*T. C. Perkins* and *Goodman* for the petitioner.

1. The petitioner has the equity of redemption and seeks to redeem on paying the incumbrances. In ascertaining their amount he is entitled to the benefit of the reduction of the usurious debt for which the law provides, and the superior court should have deducted the interest and bonus from the principal sum loaned by the building association, instead of adding it thereto. It should have been deducted upon their petition for foreclosure, even if there had been no appearance for respondent. *Lloyd* v. *Scott*, 4 Pet., 205, 215. *Cummins* v. *Wire*, 2 Halst., Ch. 73. *Morris* v. *Floyd*, 5 Barb., 130. *Sands* v. *Church*, 2 Seld., 347.

2. The petitioner is not bound by the appraisers' valuation of Pratt's interest on the levy of his execution. If they had made a mistake and given him more than his debts and costs

on the execution, equity would compel a reconveyance or payment of the excess. *Fitch* v. *Ayer*, 2 Conn., 143. *Huntington* v. *Winchell*, 8 id., 45. *Spencer* v. *Champion*, 9 id., 536. *Hathaway* v. *Hemingway*, 20 id., 191. But they have made a mistake and given him less than they should, the equity of redemption owned by Pratt being worth more than the petitioner's claim. Equity can and will correct such a mistake. *Lord* v. *Sill*, 23 Conn., 319. But if the petitioner is bound by the appraisers' valuation, he is entitled to redeem on payment of the amount of the incumbrances they found to be upon the property.

3. The respondents should not have been allowed for their personal services in collecting rents, nor for the amount paid to Sheldon. 2 Swift's Dig., 191, 2.

*Hubbard*, *L. F. Robinson*, and *Barbour*, for the different respondents.

1. The petitioner can not take advantage of usury taken by the respondents, because he has not alleged it in his petition. *Baldwin* v. *Norton*, 2 Conn., 161. *Gould* v. *Hosmer*, 12 Barb., 601. *Cole* v. *Savage*, 1 Clark's Ch., 362. *Vroom* v. *Ditmas*, 4 Paige, 526. *New Orleans Gas Light Co.* v. *Dudley*, 8 id., 452. *Curtis* v. *Masten*, 11 id., 15. *Tappan* v. *Prescott*, 9 N. Hamp., 531. *Bush* v. *Bush*, 7 Monr., 53. *Hancock* v. *Hodson*, 3 Scam., 329. *Livingston* v. *Indiana Ins. Co.*, 6 Blackf., 133.

2. The petitioner is bound by the action of the appraisers on his execution, and having levied his execution subject to the prior incumbrances, he has waived all objections to them, and can not now impeach their validity either in whole or in part. *Lord* v. *Sill*, 23 Conn., 319. *Welles* v. *Chapman*, 13 Barb., 561. *Bridge* v. *Hubbard*, 2 Seld., 347. *Shurfelt* v. *Shurfelt*, 9 Paige, 137. *Morris* v. *Floyd*, 5 Barb., 130. *Russell* v. *Dudley*, 3 Met., 147.

3. The allowances to the mortgagees for money paid to obtain title and speedy possession of the mortgaged premises, and for personal services in renting and collecting rents, were properly made. 1st. A mortgagee is entitled to receive

all necessary expenses incurred by him in enforcing his rights in the mortgaged premises, and from the profits of the premises may repay himself all reasonable expenses for the collection of the rents. *Godfrey* v. *Watson*, 3 Atk., 517. *Ramsden* v. *Langley*, 2 Vern., 536. Fisher on Mortg., 561. Coote on Mortg., 343. 2d. Although in England a mortgagee can not be allowed for personal services, ( *Godfrey* v. *Watson*, supra. *Langstaff* v. *Fenwick*, 10 Ves., 405,) the rule is different in this country, and the mortgagee is entitled to a reasonable sum for his personal services in collecting rents, &c. *Gibson* v. *Crehore*, 5 Pick., 146. *Winder* v. *Diffenderffer*, 2 Bland's Ch. 166, 206. *Barrell* v. *Joy*, 16 Mass., 221. *Miller* v. *Beverleys*, 4 Hen. & Munf., 415. *Wilson* v. *Wilson*, 3 Binn., 557. *Ringold* v. *Ringold*, 1 Har. & Gill., 11. *Pusey* v. *Clemsore*, 9 Serg. & R., 204. *Dixon* v. *Homer*, 2 Met., 420. 3d. Our own courts are inclined to favor just and reasonable charges of mortgagees in possession. *Mix* v. *Hotchkiss*, 14 Conn., 33. *Pettibone* v. *Stevens*, 15 id., 19. *Kellogg* v. *Rockwell*, 19 id., 446.

STORRS, C. J. The only relief prayed for in this bill, respecting which it is claimed by the plaintiff in error that the decree of the superior court is erroneous, is the liberty of redeeming the mortgages held by the defendants, Callender and Curtis. The bill contains no averment of the amount due on the debts secured by those mortgages, or either of them, nor that either of those debts was contracted on an usurious agreement. The only allegation, which by possibility could relate to that subject, is the one in which it is stated, only in the most general form, that the interest of Pratt in the property mortgaged by him, was, when the plaintiff attached that interest, greater than the sum at which it was appraised and set off to him on his execution against Pratt and others, and that it was sufficient for the payment of the debt for which he recovered judgment against them. There is no averment of the actual amount of the interest of Pratt, either when it was attached or set off to the plaintiff, nor of any facts shewing why the whole

amount of such interest, or sufficient to satisfy his judgment, was not set off to him on his execution. Nor are any facts stated from which it appears that the extent of Pratt's interest was not then known by the plaintiff, or that there was any fraud, accident, mistake, or other circumstance, which would lay the foundation, in a court of equity, for its interposition, by way of correcting the levy, or in any other mode. But the plaintiff in error claims to have proved that the debts of Pratt, which some of the mortgages under which the defendants now claim were made to secure, were contracted on a usurious consideration, that payments had been made by Pratt on them previous to the plaintiff's levy, which were not deducted, as they should have been, under our statute respecting usury, from the principal of those debts, and that, if they had been so deducted, the value of Pratt's interest, being his equity of redemption in the mortgaged property, would have been enhanced by the appraisers on the plaintiff's execution, so as to have left in Pratt a greater interest to be appraised and set off to the plaintiff than that which was actually taken by him ; and he now claims that the superior court erred in ascertaining the amount due to the defendants on those debts, because it did not reject all interest upon them, and apply all the payments to the reduction of the principal. Hence it is obvious that there is no averment in the bill, under which it was competent for the plaintiff to insist that the defendants' mortgages were affected by usury in the debts they were given to secure, except the general allegation which has been mentioned. If the plaintiff could have been allowed, under proper averments, to set up such usury, to reduce those debts, we think that that general allegation was insufficient for that purpose, and that it was incumbent on the plaintiff, in his bill, not only to allege that those debts were contracted on a usurious agreement, but also the particular facts and circumstances of that agreement, so that the court could see that there had been a violation of the statute of usury, and the defendants might be apprized that their mortgages would be attempted to be invalidated on that ground. *Baldwin* v. *Norton*, 2 Conn.,

161, is fully to this effect, and it is supported by the other authorities cited by the defendants, particularly by the cases of *The New Orleans Gas Light Co.* v. *Dudley,* 8 Paige, 452, 457, and *Curtis* v *Martin,* 11 Paige, 15. On the ground, therefore, that there was nothing in this bill which warranted the introduction of any evidence to prove usury in the debts secured by the mortgages held by the defendants, the finding on that subject was properly disregarded by the superior court, and in this respect there is no error in its proceedings.

But, aside from this difficulty arising from the defect in this bill, we are further of the opinion, that the plaintiff, by his proceedings and his execution, is precluded from claiming in this case that less was due, at the time of his levy, on the mortgages of the defendants, than the sum found due by the appraisers, and subject to which appraisal the plaintiff caused the equity of redemption to be set off to himself. If Pratt, or the plaintiff, either as his creditor or as succeeding to his rights, could, under the provisions of our statute of usury, when that levy was made, have treated those mortgages as creating an incumbrance on the property only to the extent of the debts secured by them after deducting any payments, whether of principal or interest, and thus have reduced that incumbrance below what it was estimated at by the appraisers, and had caused the levy to be made on the basis of such reduction, they did not see fit to avail themselves of that right, but choose to waive, by their levy, as they might, any objection founded on that statute, and thus to affirm those mortgages as incumbrances to the full amount of what was ostensibly due on them. Pratt being a party to the mortgages, of course was, and it does not appear that the plaintiff was not, aware of the circumstances under which they were executed, and neither of them claimed, before the appraisers on the plaintiff's execution, that less should be allowed on them than the sum they were apparently given to secure, although it was plainly the interest of Pratt to reduce that amount in order to have the equity of redemption applied on the execution at an enhanced sum; and it was also the interest of the plaintiff to have it applied at its

full value, unless indeed he may have supposed that he could, by allowing more on the mortgages than was really due on them, have the equity set off at an undervaluation, and then reduce the mortgages on a bill, like the present, to redeem them. We think, however, that he could not do this, but that he must be held, as the case is now presented, to his levy as he has chosen to have it made. This conclusion is in accordance with our recent decision, in *Lord* v. *Sill*, 23 Conn., 319, from which, on this point, the present case is not distinguishable.

The plaintiff in error objects to the allowance, by the superior court, to the defendants, for their personal services in leasing and collecting the rents of the mortgaged property. Under the rule adopted by the English courts, founded partly on convenience but mainly on policy, and to which they tenaciously adhere, that no compensation for personal services shall be allowed to trustees, and which they apply not only to those who are strictly such, but to all persons acting in a fiduciary capacity, such as executors, administrators, receivers, committees on the estates of lunatics, and mortgagees, that item would undoubtedly be rejected. But a reference to the decisions of the courts in this country will shew that they have generally taken a different view of this subject, and allow to trustees and these kinds of agents, not only expenditures properly made by them, but a reasonable compensation for their personal services. We are not aware that the general question of this latter allowance, independently of any previous agreement between them and those interested in his acts, has come before our courts ; but it has, for at least a very considerable period, been the practice of our tribunals to make such allowance, and, so far as we know, without objection. We think that it ought not to be disturbed. The justice of such a compensation is obvious, and it is by no means clear that its allowance would not generally promote, rather than prevent, a faithful discharge of the duties of such agents. The amount paid to Sheldon was necessarily expended by the defendants to enable them speedily to obtain possession of the mortgaged property, and

comes within a class of expenses which have uniformly been allowed.    On these points there is no error.

The judgment complained of is therefore affirmed.

In this opinion the other judges concurred.

Judgment affirmed.