#### JANUARY TERM, 1878.
*[Continued from the last volume.]*

Present,

PARK, C. J., CARPENTER, PARDEE, LOOMIS, AND GRANGER, JS.

---

THE DELAWARE AND HUDSON CANAL COMPANY *vs.* SAMUEL
BONNELL, JR., AND OTHERS.

A creditor who levies on an equity of redemption, and has the amount of the
incumbrance allowed in his favor in the appraisal of the interest set off to
him, can not set up the invalidity of the incumbrance.

Whiteacre and blackacre were mortgaged to *A*, and afterwards blackacre to *B*,
and still later blackacre to *C*. *B* foreclosed the mortgagor and *C* upon his
mortgage of blackacre, and then redeemed both pieces by paying *A's* mort-
gage, taking a quitclaim from *A*. *C* afterwards levied an execution against
the mortgagor upon the equity of redemption in whiteacre, subject to the
entire mortgage debt to *A*, now held by *B*, and resting upon both pieces, the
whole of that debt being allowed for in the appraisal of the equity levied on.
Upon a petition brought by *B* to foreclose the mortgagor and *C* upon the
mortgage of whiteacre originally made to *A*, it was held that *C* was estopped
from claiming that blackacre should be charged with any portion of the mort-
gage debt.

VOL. XLVI.—2

There was no merger of the mortgage interest acquired by *B* in whiteacre, because he had no superior estate in whiteacre in which it could merge, and because, if he had, it was for his interest that it should not merge, and therefore presumably his intent that it should not.

BILL for a foreclosure; brought to the Superior Court in Fairfield County. Facts found by a committee, and decree of foreclosure passed by *Hovey, J.* Motion in error by respondents. The case is fully stated in the opinion.

*G. H. Watrous* and *W. B. Stoddard,* for the plaintiffs in error, cited as to merger, *Lockwood* v. *Sturdevant,* 6 Conn., 390, and *Bassett* v. *Mason,* 18 id., 136; and upon the point that a mortgagee will not be permitted to obtain more than his debt, *Findlay* v. *Hosmer,* 2 Conn., 353, and *Porter* v. *Seeley,* 13 id., 564.

*H. Stoddard,* for the defendants in error.

PARDEE, J. On the 27th day of February, 1867, Thompson & Co., owning a tract of land in Bridgeport divided into three lots, which have been designated as *P, R,* and *S,* mortgaged *S* to P. T. Barnum for $15,000. On April 17th, 1869, Black, Wilson & Co., who had become the owners of the land, mortgaged *P* and *R* to the same person for $9,000; on May 20th, 1869, mortgaged *R* and *S* to the Delaware & Hudson Canal Company, the petitioners, for $40,000; and on October 4th, 1870, mortgaged *R* and *S* to Bonnell, the respondent, for $7,000. In June, 1872, the title of the Delaware & Hudson Canal Company to *R* and *S* became absolute by foreclosure. On December 5th, 1872, they paid Barnum the amount of his mortgage upon *S,* being $18,432.92, and also the amount of his mortgage upon *P* and *R,* being $10,807.75, and he gave them a quit-claim deed of his interest in the three lots. In September, 1873, Bonnell, having obtained a judgment against Black, Wilson & Co. for $8,445.76, levied his execution for that amount upon *P,* and caused all the right, title and interest of the debtors therein, subject to the Barnum mortgage, then amounting to $14,035.60, to be set off to himself, their equity of redemption being appraised at

$8,217.60. The Delaware & Hudson Canal Company have brought their petition to make their title to $P$ absolute by foreclosure unless Black, Wilson & Co., or Bonnell, or some one of the various persons claiming an interest in it, will redeem. The Superior Court has decreed that unless these persons shall pay to the petitioners the whole of the above named amount, they shall each and all be forever barred and foreclosed. Bonnell has filed a motion in error, making specific assignment of errors as follows:

1. That the court erred in ruling that the mortgage debt, amounting to the sum of $9,000, known as the Barnum mortgage, was not fully satisfied and paid, and that it was such a mortgage debt as could be foreclosed against the respondents.

2. In holding, under the circumstances of this case, that the merger of the mortgage interests and the equity of redemption in the petitioners was not a satisfaction and payment of this mortgage debt.

3. In holding that under the facts found the petitioners were entitled to foreclose the respondents from that part of the mortgaged premises called $P$, unless the respondents paid the entire mortgage debt with interest.

4. In not holding that the respondent Bonnell could only be foreclosed on the $9,000 mortgage, of his interest in the tract $P$, by paying such a proportion of the mortgage debt as the tract $P$ bore in value to the entire mortgaged premises $P$ and $R$.

The plaintiff in error insists that he should be allowed to redeem upon payment of such proportion of $14,035.60 as the value of $P$ bears to the value of $P$ and $R$; but upon the trial he offered no evidence as to the value of either lot, and has not furnished to the court any data for establishing that proportion. Moreover he has barred himself of the right to ask for any division. With full knowledge of all the facts he caused his execution to be levied upon an equity of redemption in $P$, subject to the whole amount of the debt originally resting upon $P$ and $R$; there was set to him the entire remaining estate, as that would only suffice to satisfy his

demand; he now asks a court of equity to destroy the right of the petitioners to obtain their debt from *P*, having himself recognized its existence for the purpose of determining the proportion of the equity which he should take upon execution; he asks to be allowed to take property appraised at $22,000, in satisfaction of a debt amounting to $8,445.76.

In *Lord* v. *Sill*, 23 Conn., 319, the petitioner had taken upon execution the whole equity of redemption in land subject to three mortgages; he asked to be allowed to redeem upon payment of two of them, alleging the third to have been fraudulent. The court says:—"If he was permitted to do this, under the title acquired by the levy of his execution, it is obvious that he would in this way acquire a title to real estate valued at more than a thousand dollars, without making any compensation for it whatever. The plaintiff's argument is, that as that was a fraudulent mortgage, the defendant cannot set it up as against the plaintiff, a creditor of Hart, under whom they both claim. We think it a sufficient answer to this to say, that the defendant does not set up his fraudulent mortgage, but the plaintiff set it up and affirmed it by levying his execution expressly subject to it; and the defendant may well say to him, you have not taken or attempted to take the land represented by that mortgage, and therefore have no equitable claim to it, and you must be willing to do what is equitable at the time when you are asking for equitable relief."

In *Waterman* v. *Curtis*, 26 Conn., 241, the petitioner having levied his execution upon an equity of redemption, prayed for relief against a mortgage, alleging that it was given to secure a debt tainted by usury. The court said:— "But we are further of the opinion that the plaintiff by his proceedings under his execution is precluded from claiming in this case that less was due, at the time of his levy, on the mortgages of the defendants, than the sum found due by the appraisers, and subject to which appraisal the plaintiff caused the equity of redemption to be set off to himself.  *   * Pratt being a party to the mortgages, of course was, and it does not appear that the plaintiff was not, aware of the cir-

cumstances under which they were executed, and neither of them claimed before the appraisers on the plaintiff's execution that less should be allowed on them than the sum they were apparently given to secure, although it was plainly the interest of Pratt to reduce that amount in order to have the equity of redemption applied on the execution at an enhanced sum; and it was also the interest of the plaintiff to have it applied at its full value, unless indeed he may have supposed that he could by allowing more on the mortgages than was really due on them, have the equity set off at an undervaluation and then reduce the mortgages on a bill like the present to redeem them. We think however that he could not do this, but that he must be held, as the case is now presented, to his levy as he has chosen to have it made." In *Russell* v. *Dudley*, 3 Met., 147, Shaw, C. J., says:—"The creditor treating it as a subsisting mortgage is afterwards estopped to deny the existence of such mortgage; if he could afterwards avoid that mortgage and hold the whole estate, he might get it for a very inadequate consideration."

We are not called upon to determine that under no circumstances would a court of equity relieve *P* of a portion or even of the whole of the mortgage; for the purposes of this case Bonnell has determined the question in advance; he has specified the amount to which *P* shall be burdened, so far as he is concerned; he has said that the precise estate which he will take in it is that which remains after payment of the whole amount of the mortgage; and the decree is but a ratification of his own act. He has placed himself in the position of a purchaser with knowledge that the whole of an incumbrance once resting upon *P* and *R* then rested only upon *P;* he paid just so much less for his estate in *P* than he otherwise would have been compelled to pay, and is not entitled to ask for contribution from *R*.

When in June, 1872, the foreclosure of the mortgage to the Delaware & Hudson Canal Company was made absolute, they became the owners of the equity of redemption in *R* and *S;* their debt of $52,000 against Black, Wilson & Co., which was represented and secured by that mortgage, was

paid; by decree of court the equity was made to stand for that precise debt and for no other; if no one of those to whom the privilege of redemption was given chose to exercise it, the Delaware & Hudson Canal Company took the equity with the attendant possibilities as to an increase or diminution in value. But Barnum held a prior mortgage upon *R* and *S*, by means of which he could extinguish that equity; of necessity they paid him $29,000 for his title to *R* and *S*, together with his title to *P*. Surely this last sum, paid six months after absolute foreclosure of *R* and *S*, did not enter into and was not represented by that decree; and as by it they already held the entire equity for $52,000, it is not to be presumed that they paid $29,000 more for a right, with the intent to merge and lose it in that which they already held. On the contrary it is to be presumed, so far as *R* and *S* are concerned, that the mortgage title purchased from Barnum is of value to them, certainly in securing the re-payment of the money paid for it, possibly as fortifying what may prove to be a defective title to the equity; and it is a title which they may sell.

By virtue of his mortgage upon *P*, Barnum could have extinguished the equity therein; the Delaware & Hudson Canal Company bought this right for a valuable consideration; it is difficult to see how it has been destroyed in passing to them for value; equally difficult to see how Bonnell, as the owner of that equity under his levy, can destroy their right or force them to obtain the money which they paid for it from the equity in *R* and *S*, of which they had been for six months the absolute owners by decree of court for full consideration, to wit, a debt against Black, Wilson & Co.

And this purchased mortgage upon *P*, valuable as security for a debt, has not been lost by falling into a superior estate held by them therein, for they had none; it is not susceptible of being merged in their equity in *R* and *S*; the two rights concern different pieces of land; they cannot be brought into a state of legal coincidence; and even if this were not so, in a case where it is so manifestly their right and for their interest to preserve their mortgage title to *P* intact, for the

security of perhaps the whole, at least of a part, of the price paid therefor, a court of equity will not infer an intent to merge and lose it in the equity in $R$ and $S$ taken for another debt. *Lockwood* v. *Sturdevant,* 6 Conn., 373; *Mallory* v. *Hitchcock,* 29 id., 127; *Hunt* v. *Hunt,* 14 Pick., 383; *Savage* v. *Hall,* 12 Gray, 364; *Stanton* v. *Thompson,* 49 N. Hamp., 277.

It is found in 1877 that in 1872 the joint value of $R$ and $S$ was $100,000; that is about $18,000 more than the aggregate amount of the debt due to the Delaware & Hudson Canal Company, and of the sums paid to Barnum for his mortgage upon $P$, $R$ and $S$; and Bonnell insists that therefore they have no equitable lien upon $P$.

He was a subsequent mortgagee of $R$ and $S$; he was made a respondent in the petition for foreclosure; he had his day in court and opportunity for redemption; he declined to avail himself of it; presumably he did not regard it as a valuable privilege; he preferred to allow them to take the chance of obtaining their debt from the property. It is also found that the appraised value of $R$ and $S$ in 1877 is only $40,000; he is not therefore now in a position as between himself and them to force the mortgage resting upon $P$ and $R$, wholly upon $R$.

There is no error in the decree complained of.

In this opinion the other judges concurred.