GARDNER, administrator of GARDNER, *against* ASTOR.        *October* 13

Where the equitable and legal estate are united in the same person, the former is merged in the latter; as where the owner of an equity of redemption pays off a subsisting mortgage, and takes an assignment of it, it will be intended that he does it to exonerate his estate from the incumbrance, and that the mortgage is extinguished, unless it is made to appear that he has some beneficial interest in keeping the legal and equitable estates distinct.

ON the 20th of *August,* 1800, *Daniel R. Durning* executed a bond and mortgage in fee, to *Evert Bancker,* for securing the payment of 2,500 dollars, in one year.

In 1801, all the right, title and interest of *Durning* in the mortgaged premises, were sold by the sheriff, under a *fieri facias*, issued on a judgment against *D.* at the suit of *Joseph Winter*, for 7,661 dollars and 37 cents, to *Philip Brasher*, who was the highest bidder, for 4,933 dollars and 17 cents. *Brasher*, who acted as the agent of *Winter* in purchasing at the sheriff's sale, on the 19th of *December*, 1801, released and conveyed the premises to *Winter;* and the deed was recorded the 8th of *June*, 1808.

*Bancker*, the mortgagee, on the 5th of *November*, 1800, assigned the bond and mortgage to his son, *Christopher*, who died soon after, having made his will, and appointed *R. Strong* and *A. Bancker* his executors. On the 11th of *December*, 1806, *Winter* paid off the bond and mortgage to the executors of *C. B.*, and took an assignment thereof, by which he became possessed of the legal and equitable interests in the premises. Being so seised and possessed of the premises, *Winter*, on the 10th of *January*, 1811, sold and conveyed the same, in fee simple, to the defendant, *J. J. Astor*, for the consideration of 7,500 dollars, with full covenants of seizin, against incumbrances, for quiet enjoyment, and warranty, which deed was duly recorded on the 15th of *January*, 1811.

*Winter*, by an assignment dated the 6th of *March*, 1810, transferred the bond and mortgage to *Charles Gardner*, (who died intestate the 21st of *December*, 1811,) as security for a bond of 3,500 dollars, dated the 22d of *January*, 1810. This assignment was not acknowledged, until the 28th of *January*, 1811, and was not recorded.

The defendant, in his answer, averred that he purchased the premises of *Winter*, absolutely, for a good and valuable consideration, and under the assurance of *W.* that there was no incumbrance thereon, and without any knowledge or suspicion of the assignment of the mortgage to *Gardner*, and with the full assurance and belief that *Winter* had a good and perfect title to the premises; and that he

verily believed that the assignment from *W.* to *G.,* though
dated prior to the deed from *W.* to the defendant, was, in
fact, executed subsequently to the defendant's deed.

The cause was heard on the bill and answer.

*D. B. Ogden,* for the plaintiff.

*Harison,* for the defendant.

THE CHANCELLOR. This cause is brought to a hear-
ing upon the bill and answer, and I am, therefore, to take
the answer as true.

*Winter,* in *December,* 1801, purchased the equity of re-
demption in the mortgaged premises, and he shortly after-
wards paid off an outstanding mortgage, and took an as-
signment of it, and thereby united in himself the legal and
equitable estates, or the whole interest in the land. The
question is, whether the incumbrance was not, by that act,
extinguished?

In *Forbes* v. *Moffatt,* (18 *Vesey,* 384.) a mortgagee of
land afterwards took the equity of redemption by will, and
it was held to be a question of intention, declared or pre-
sumed, whether in taking the estate, he meant the charge
to sink into it, or to continue distinct from it. The charge,
said the master of the rolls, had always been held to merge,
when it was indifferent to the party in whom the interests
had united, whether the charge should, or should not sink.
In the present case, the intention of *Winter* was to extin-
guish the mortgage. It was paid off by him, and it was
many years after that redemption, before he undertook to
sell and assign the mortgage as a subsisting incumbrance.
I am very apprehensive, that the sale or assignment was
made with unwarrantable views. It bears date, indeed, in
*March,* 1810, but it was not acknowledged until *after* the
sale of the land to the defendant, in *January,* 1811, for a
full price, and with full covenants of warranty. The an-

swer avers a belief that the assignment was *subsequent* to the deed to the defendent, and there is no proof to show when the assignment was actually made.

There is no reason appearing from the case, why the two estates should have been kept distinct in the hands of *Winter*, and we have seen to what abuse it may lead. Unless some beneficial interest for keeping up the distinction clearly appears, we ought rather to adopt the ordinary and natural conclusion, that when the owner of the equity of redemption pays off a subsisting mortgage, he does it to exonerate his estate. We ought, as a general rule, to follow the principle, that in the union of the equitable and legal estates in the same person, the former is merged and extinguished.

Bill dismissed, without costs.