COUNTY OF PENOBSCOT, ADJOURNED TERM, AUGUST, 1836.

---

*Mem.* — Hon. *Albion K. Parris* resigned his office of Justice of the Supreme Judicial Court before the commencement of this *Term*, and his successor was not appointed until after its termination.

---

## NATHANIEL HATCH *vs.* STEPHEN KIMBALL.

Where a mortgage is assigned to one having an interest in the premises mortgaged ; the mortgage is not extinguished, if it be for the interest of the assignee to uphold it.

Where one man conveys land to another, and at the same time the grantee gives a bond to the grantor, conditioned that the grantee should reconvey the premises on demand, and should permit the grantor to enjoy the premises until the conveyance back ; the grantee can maintain no action against the grantor on the covenants of the deed.

If one man convey land to another, covenanting only, that neither he, nor his heirs, nor any person under him or them, shall set up any demand, right, or title to the premises forever, and at the same time takes back a bond to reconvey the premises to him on demand, and afterwards becomes the assignee of a mortgage previously made by him to a third person ; he is not estopped from setting up his title under the mortgage, against his grantee, or those claiming under him.

THIS was a writ of entry on the demandant's own seisin. In support of the action the demandant gave in evidence a quitclaim deed from *Stephen Kimball,* the tenant, to his brother, *Daniel Kimball,* dated *Dec.* 23, 1818 ; the levy of two executions on the 8*th* day of *Nov.* 1827 ; a conveyance from the execution creditors to the demandant ; a deed from *Daniel Kimball* to *Leggett & Hance,*

dated *November* 27, 1828, and a deed from them to the demandant, dated *April* 25, 1832. The tenant then introduced in evidence a bond from the same *Daniel Kimball* to him, dated the said 23*d* of *December*, 1818, conditioned to reconvey the property; also a mortgage deed from the tenant to *John Peabody*, dated *May* 17, 1811, to secure the payment of $1973, 76; an assignment of the same mortgage by *Peabody* to *Wheelwright & Clark, April* 24, 1812; an assignment from them to *John Buck*, dated *June* 2, 1827; and a deed from *John Buck*, reciting a judgment on the mortgage and possession taken under it in 1824, to the tenant, dated *June* 2, 1827. The levies were seasonably recorded, and all the deeds were acknowledged and duly recorded. Each deed and the levies covered the demanded premises. The bond to reconvey the same premises was not recorded. The contents of the deeds and bond sufficiently appear in the opinion of the Court. The tenant proved, that he had occupied the premises for thirty years next before the suit, and that he had built a house thereon, and made expensive repairs during the time, both before and after the deed from *Buck* to him. The Judge ruled, that the demandant had maintained his action; and thereupon the tenant became defaulted; which default was to be taken off and a new trial granted, if the ruling of the Judge was erroneous.

*Abbott*, for the tenant. The object of the arrangement between *Stephen* and *Daniel Kimball* was not to secure money due from one to the other, and make the tenant stand in the relation of mortgagor; but simply to make *Daniel* the trustee of the property during the pleasure of *Stephen*. He could compel a reconveyance at any time. But the tenant has been in possession for thirty years, claiming the property and making extensive repairs. This is equivalent to recording. *Davis* v. *Blunt, 6 Mass. R.* 487. There is no evidence of any fraudulent intent between the parties, but if there had been, the creditors of *Daniel* could not set the papers aside, and avoid the effects of them, but those of *Stephen* only. At the time of the conveyance to the demandant, the tenant was in possession claiming title, and nothing passed by the deeds, even if any title had been in his grantors. But the mortgage to *Peabody* was anterior to any title of *Daniel Kimball*, and the tenant can hold under that.

*Rogers,* for the demandant. Here was a conveyance by the tenant to *Daniel Kimball,* under whom we claim, recorded at the time it was given, and nothing appears of record to destroy its effect. If the bond to the tenant would have operated, as a defeasance of the deed, had notice of it appeared by recording, or otherwise, he might have had a remedy, but it would not have defeated this action. But the deed and bond were a mere arrangement to defeat their creditors. The mortgage was redeemed by the payment of the sum secured by it by the mortgagor. But if this can be considered as an assignment by *Buck,* and not a redemption, then the tenant would be estopped by his deed to *Daniel Kimball* to set up this title. This runs with the land and is an estoppel in this action. *Fairbanks* v. *Williamson,* 7 *Greenl.* 96.

The action was continued *nisi,* and the opinion of the Court afterwards drawn up by

WESTON C. J. — The deed of the twenty-third of *December,* 1818, of *Stephen Kimball* to his brother *Daniel,* and the bond of the same date, *Daniel* to *Stephen,* both relating to the land in controversy, constitute one transaction. The effect was to transfer the legal seisin of the land to *Daniel,* who was thereupon to hold the same for the use of *Stephen,* to whom the premises were to be assured by a formal deed upon demand. The stipulations in the condition of the bond are the covenants of *Daniel,* the fulfilment of which is secured by a penalty. *Low* v. *Peers,* 4 *Burrow,* 2225. The condition has these words, " I agree and bind myself, my heirs and administrators and assigns by these presents, that the said *Stephen* shall or may occupy the same premises, in all its parts as shall best suit him, by himself, or by any other person or persons, unmolested in any manner by me or mine, free of any expense, and I will re-deed to him, or his heirs or assigns, by a deed of quitclaim on demand." This being an instrument executed between brothers, it may be regarded as a covenant by *Daniel* to stand seised to the use of *Stephen.* For although it does not purport to have been made upon the consideration of love and affection ; yet this may be implied from the relation subsisting between them.

In *Bedel's case*, 7 *Coke*, 40, it was resolved, that although the consideration in the deed of the covenantor did not run to the wife, yet the limitation of a use to the wife imports a consideration in itself, so if it be to any of his blood. To the same effect is the fifth resolution in *Henry Harpur's case*, 11 *Coke*, 23. Nor is it essential, that the relation between the parties should be stated in the instrument. It is sufficient if it exists. *Goodtitle* v. *Petto*, 2 *Strange*, 935. The bond with its condition was not recorded; but the continued possession of *Stephen Kimball* was equivalent to registry. *Davis* v. *Blunt*, 4 *Mass.* 487, and the cases there cited. But we give no decided opinion, whether that instrument is to be regarded as a covenant to stand seised, executed by the statute of uses, with a covenant for further assurance, as in our judgment the title of the defendant is sustained upon another ground, not liable to objection.

The deed from the tenant to *John Peabody*, conveying the demanded premises in fee and in mortgage, was executed many years prior to that, under which the demandant claims. The title thus created, passed through several mesne conveyances to *John Buck*. Upon this mortgage, judgment was rendered against the tenant, for the purpose of foreclosure, at the *June term*, 1823, of the Common Pleas for the county of *Penobscot*, and a writ of possession was duly executed thereon, on the fourth of *June*, 1824. On the second of *June*, 1827, *John Buck*, for a valuable consideration, remised, released and forever quitclaimed to the tenant, *Stephen Kimball*, his heirs and assigns, all his right, title and interest in said lot of land, by virtue of the mortgage, assignment, judgment and possession, which had been before recited, ".to have and to hold the same to him the said *Kimball*, his heirs and assigns forever."

To the title of the tenant, under the deed from *Buck*, two objections are made ; first, that it was a discharge and extinguishment of the mortgage ; and secondly, if it was not, that it enured by estoppel to *Daniel Kimball*, and to those claiming under him. The deed from *Buck* has words of conveyance and assignment, to *Kimball*, his heirs and assigns. As he had before parted with the formal title, and his right under the bond was in some danger of being defeated by *Daniel Kimball* and his creditors, it became manifestly the interest of the tenant to uphold the title, created by the mortgage

and the proceedings under it. He had entered into no stipulations with *Daniel* or his assigns, to extinguish the mortgage.

In *Gibson* v. *Crehore*, 3 *Pick*. 475, the purchaser of an equity of redemption, who had given bond to pay the debt, for which the land was mortgaged, took an assignment of the mortgage, paying the amount due thereon. This was held to be no extinguishment, it being the interest of the purchaser to uphold the title created by the mortgage, and his intent to do so being manifest, as it is here, by the form of the instrument. And the doctrine was there recognized, that effect is to be given to an assignment, according to the interest of the assignee. This question was fully considered also by this Court in *Freeman* v. *Paul*, 3 *Greenl.* 260 ; and it was regarded as a settled principle, that a mortgage is not extinguished, if it be the interest of the assignee to uphold it.

Did it enure to *Daniel Kimball* and his assigns by estoppel ? Estoppels are allowed to prevent circuity of action. *Coke Lit.* 265 *a.* In the deed, *Stephen Kimball* to *Daniel,* the former covenanted that neither he, nor his heirs, nor any person under him or them, should set up any demand, right or title to the premises forever. But in the deed of the same date, *Daniel Kimball* to *Stephen,* which is part of the same transaction, *Daniel* covenanted under a penalty, that *Stephen* should enjoy the premises ; and that he would reconvey the same to him on demand. Taking both instruments together, *Daniel* was to take no beneficial interest. He could not avail himself of the covenant in the deed to him. He could neither enforce its performance, nor recover damages, if it was not performed. It was completely neutralized and defeated by the condition in the bond. *Stephen* then is not estopped to claim the land ; and he was at liberty to acquire for his own use any collateral title or assurance. An estoppel does not arise between the parties. The title of the tenant is perfect under his deed from *Buck,* the mortgage having been long since foreclosed.

Nor have the creditors or grantees of *Daniel* any right to complain. *Stephen* continued in the undisturbed possession. This was sufficient to put them on their guard. And if upon their inquiry, *Stephen* had disclaimed title, he would not afterwards have been permitted to set it up to their prejudice. But no such fact appears.

If fraud was meditated by these brothers in their transaction, which there is too much reason to suspect, it was to the prejudice of *Stephen's* creditors. They might have treated the deed to *Daniel* as fraudulent and void. But *Daniel's* bond and covenants to *Stephen* had no tendency to defraud the creditors of the former. He thereby relinquished nothing, to which he or they had any just claim. Stephen continuing in possession, they were bound to take notice, that he might have an interest, notwithstanding the apparent record title in *Daniel.* By sustaining the title of *Stephen,* to whom the property rightfully belongs, it becomes accessible to his creditors, and any fraudulent purpose, he may have entertained with regard to them, is thereby defeated. The default is taken off, and a new trial granted.