---
Hopkinson *v.* Dumas.
---

It was objected that the defendant, being an indorser of the note, ought not to be held, because the note was mutilated by the erasure of the plaintiff's name.

*Flint & Bryant,* for the plaintiff.

*S. Dana,* for the defendant.

---

# HOPKINSON *v.* DUMAS.

Where land is conveyed by deed to one person, and a portion of the purchase money is paid down, and the balance by notes, which are taken in payment, and four other persons furnish each an equal share with the grantee of the money paid down, and all sign the notes with the grantee for the balance of the consideration, with the agreement, at the time of the purchase, that they shall each pay his equal proportion, with the grantee, of each note, a trust will result to each in the land, and each will have an equitable interest in one fifth part of the land, although the party taking the deed sign said notes as principal, and all the others sign the same as sureties, and stand in that relation toward the grantor.

While the legal estate in lands is in one person, and the equitable or trust estate in another, no inchoate right of dower will be acquired by the

Hopkinson *v.* Dumas.

wife of either; and in case of the death of either or both of such own-
ers, neither of their widows take dower in the premises.

Where the legal estate and the equitable interest in the same lands become
united in the same person, by conveyances from different parties, at dif-
ferent times, the equitable estate becomes merged and lost in the legal,
and the whole fee-simple estate follows the legal title; and in case of the
decease of such owner of the united interests in the land, the same will
descend, and dower in it will be taken, as though the whole united in-
terest had passed to the intestate, with the legal interest.

SUIT for dower in certain premises in Concord, in this
county. It was admitted that the demand for the dower
was duly made on the 28th day of June, A. D. 1856.

It was also admitted by the defendant that the plaintiff
is entitled to dower in one fifth part of the premises, and
the question made in this case is, whether she is entitled
to dower in any greater portion of them, under the fol-
lowing circumstances: In 1835, George Hopkinson, the
plaintiff's husband, John T. Coffin, Woodbury Melcher,
Francis Russell and Horace L. Hazelton, agreed to unite
in the purchase of the premises in question, each to take
one fifth part thereof. The purchase was accordingly
made on the 14th day of July, 1835, for the sum of $4,500,
which was paid, $1,000 in cash, and the remainder in four
promissory notes, payable in one, two, three and four
years from date, with interest, annually. The $1,000 was
paid in cash, by each party contributing his share ($200),
and the notes were given in the form of the following
copy of one of them: viz.,

"July 14, 1835. For value received, we, George Hop-
kinson, principal, and John T. Coffin, Woodbury Melcher,
Francis Russell and Horace L. Hazelton, sureties, promise
to pay Isaac Clement, or his order, one thousand dollars
in two years, with interest, annually. (Signed) George
Hopkinson; John T. Coffin, W. Melcher, Francis Russell,
H. L. Hazelton."

The deed of the premises was made to George Hopkin-

son, the plaintiff's husband, alone, and he gave to the other parties a receipt as follows :

" Received of John T. Coffin, Woodbury Melcher, Francis Russell and H. L. Hazelton, two hundred dollars each, which has been applied to the purchase of land and buildings of Isaac Clement, in Concord, and conveyed by deed from said Clement to me. I hereby agree to hold said deed in trust for them in equal proportion with myself, and pay them an equal proportion of the rents accruing on the same before sold, and an equal proportion of the amount the same may be sold for, and they are to pay their proportion of the balance of purchase money when due, and a proportion of all losses or expenses, and on payment for the whole being made, shall receive a good and sufficient deed, on demand.

July 25th, 1835.        (Signed)        GEORGE HOPKINSON."

The first note was paid at or about the time of its maturity, by the parties, each contributing his equal share. Subsequently to this, Hazelton assigned all his interest to Coffin, and afterward, on the 13th day of May, 1837, George Hopkinson made an arrangement with Coffin, Melcher and Russell, to pay to them the amount they and Hazelton had paid and were to pay toward the purchase money of the premises, being four fifths as aforesaid, in full of all their interest in the purchase, he to hold the premises entirely on his own account, and, accordingly, gave them his note for that amount, secured by a mortgage of the same premises. Shortly after this a suit was commenced by them against the said George Hopkinson, on that note, and certain other property of his attached. During the pendency of that suit, Coffin, Melcher and Russell made a sale and assignment of the note and suit to a third party, judgment was obtained for the sum of $4,861.37, debt and costs, in their names, and the sum of $1,477.38, realized thereon from a levy on the property

attached, for the benefit of the assignee. At or about the same time, the assignee took possession of the mortgaged premises, being the premises in question, upon the mortgage to Coffin and others, to secure the note as aforesaid, for foreclosure, and the same was duly foreclosed. The defendant derives his title under said assignee. No conveyance of any kind was made of the premises by Hopkinson to Coffin, Melcher, Russell and Hazelton, before the mortgage in 1837, before referred to, nor had they any written evidence of title thereto, except what appears by the receipt herein before stated, nor did they, in 1837, make any conveyance in writing of any interest in them to Hopkinson. The plaintiff has never made any conveyance or release of her dower in the premises.

It was agreed that the defendant should have the benefit of any defense which he has at law, or might have by any proceedings in equity in the premises, for that purpose, upon facts as above stated; judgment to be rendered for the plaintiff, for her dower in one fifth part of the premises, and in such further portion, if any, in addition, as the court shall determine, and for damages for detention from time of demand as above mentioned; and the questions of law arising upon the case were reserved and transferred to the law term.

*Minot & Mugridge,* for the plaintiff.

It is admitted that the widow of a mere trustee is not entitled to dower in the trust estate. The question, in this case, then, is whether the plaintiff's husband was such trustee of the four fifths in question.

1. Under the circumstances stated there was no resulting trust, by operation of law, to the other parties. First, because the purchase money was not paid by them. The notes given for the premises show that the plaintiff's husband was the principal, and the other parties sureties. The agreement of July 5th can not affect this point, be-

cause it was subsequent to the conveyance, which was on the 14th; and a resulting trust must arise at the time of the conveyance itself, if at all. See cases cited in *Page* v. *Page*, 8 N. H. 195, 196. And if, as the note shows, it was the intention that the plaintiff's husband should stand as principal and the other parties only as sureties, any subsequent payment by the sureties would not raise a resulting trust in their favor. Second, because a resulting trust can not be raised in favor of any person, if it is not the intention of the parties that the legal estate should vest in him. *Dow* v. *Jewett*, 21 N. H. 489, and cases cited. The agreement of July 25th shows that it was not the intention of the parties that the legal estate should, at all events, so vest in the other parties.

2. Nor did the agreement of July 25th create such a trust as to defeat the plaintiff's right of dower. First, because the conveyance to her husband was on the 14th; and even if that agreement created a trust at the time of the execution of it, yet it did not have a retrospective effect to avoid the previous seizin of the husband, which was sufficient to entitle the wife to dower. Second, because it was not the intention of that agreement to give the other parties a legal estate in the premises at all events. *White* v. *Carpenter*, 2 Paige 238; *Dow* v. *Jewett*, 21 N. H. 489.

3. Whatever may have been the rights and interests of the other parties previously, the arrangement of May 13, 1837, was a surrender of them. The effect of it was precisely the same as if the plaintiff's husband had originally made the purchase entirely on his own account.

*Flint*, for the defendant.

1. The plaintiff's husband, George Hopkinson, was trustee of four fifths of said premises. The fact that the receipt was not given till the 25th of July, does not alter the case. The resulting trust does not depend upon the

receipt, but is effected instantaneously, upon the deed being given, and by force and operation of the law. The receipt shows fully the understanding of the parties, and the nature of the transaction ; but the trust was created before it was given, and wholly independent of it. *Scoby* v. *Blanchard,* 3 N. H. 170; *Pritchard* v. *Brown,* 4 N. H. 397–404; *Pembroke* v. *Allenstown,* 21 N. H. 107; *Page* v. *Page,* 8 N. H. 187.

2. Whether or not the arrangement of May 13, 1837, could change any title to this real estate, or vest any title to it in George Hopkinson, which he had not before, may be doubtful. But if it did, his seizin was but instantaneous, he at the same moment giving a mortgage of the land back, for the purchase money, under which the defendant now holds. Such instantaneous seizin would not entitle the plaintiff to dower. *Moore* v. *Esty,* 5 N. H. 479; *Bullard* v. *Bowers,* 10 N. H. 500.

SARGENT, J. The case finds that the arrangement and agreement, under which the purchase was made, was that the parties should unite in purchasing the land, and that each should have one fifth part thereof; that each furnished his equal proportion of the money that was paid at the time, and they all signed the notes given for the balance of the purchase money; but the deed was made to only one, and he signed the notes as principal and the others as sureties only; and from this it is claimed that there can be no resulting trust to those who signed as such sureties.

There is no doubt, in ordinary cases, where a man purchases land and gives his note for it, and procures one or more other persons to sign said note as his sureties, and this is all the arrangement there is in the case, even though the sureties, in the end, should be obliged to pay the whole note, they would acquire no equitable interest in the land by such payment. But where the agreement, at

the time of the purchase, was that each should pay his equal share, and so far as the payment was made down, they did thus pay, and gave their notes with the express agreement that each should pay his equal share of the whole, and be entitled to his share of the land, that would in law create a resulting trust to each for his share of the land, as against the one who had the deed in his own name.

And in the case before us it seems evident that the reason why the notes were given in the form they were, was that the land was purchased for the purposes of speculation, and Clement would be much more likely to sell his land for a reasonable price to one man, and that perhaps his neighbor, without knowledge of the intended speculation, than he would to several men, knowing such to be their purpose. Hence we see the negotiation was all made with Clement by Hopkinson, the deed taken to him alone, and he paid over the $1000 in cash and gave notes, on the face of which he was principal and the other parties sureties; yet the others all furnished their proportion of the cash paid, and it was agreed that these notes should all be considered and treated as between themselves as the joint and several notes of all, and be paid in equal proportions between them; so that in fact from the time of the purchase there was a trust in behalf of all.

It was not necessary that Clement should know any thing about the arrangement in order to constitute the trust. What was paid down was equally in fact the money of each, and so far, then, would arise a resulting trust, and we can not see any difference in the effect of the notes given for the residue. They were all to pay an equal proportion. The notes were given and received as so much money in payment for the land, and, as between themselves, it may be well enough considered that they were each principal for the proportion which each was to pay and sureties for all the rest, for their several propor-

tions. And however they may have stood on the face of the note, and however they may have agreed to stand, so far as the payee was concerned, yet there is no objection to proving by parol in any case that now occurs to us, what was the real situation and the true relation of the several signers of the note as between themselves.

So that we see no objection on this proof, to holding that there was, in this case, prior to the giving of the receipt by Hopkinson, and that there would have been, without any such receipt, a resulting trust to each of those who signed the notes as sureties. Our statute provides that "no trust concerning lands, excepting such as may arise or result by implication of law, shall be created or declared, unless by an instrument signed by the party creating the same, or by his attorney." Rev. Stat., ch. 130, sec. 13 ; Comp. Laws 290.

But although a trust can not be created or declared by parol evidence, yet a resulting trust may be shown by that kind of proof; it may be proved, rebutted or discharged by parol evidence. *Scoby* v. *Blanchard,* 3 N. H. 170 ; *Pritchard* v. *Brown,* 4 N. H. 397 ; *Page* v. *Page,* 8 N. H. 187 ; *Brooks* v. *Fowle,* 14 N. H. 248 ; *Pembroke* v. *Allenstown,* 21 N. H. 107 ; *Gove* v. *Lawrence,* 26 N. H. 484 ; *Tebbetts* v. *Felton,* 31 N. H. 273. Parol evidence is admissible to show a resulting trust, but not to show any other. *Farrington* v. *Barr,* 36 N. H. 86 ; *Moore* v. *Moore,* 38 N. H. 382.

So that if there were no trust declared in the case in writing, there would seem to be no difficulty in holding that a trust upon the facts stated, resulted by operation of law. But we think that this is not perhaps the more correct view to take of the case. Here is a trust declared in writing, which, although dated after the date of the deed, evidently contains the agreement and understanding of the parties, not only at the time of its date, but also at the date of the deed, and we think this written declara-

tion of the trust should be and must be considered as part of the original transaction, and that the giving of the deed, the agreements and the giving of this writing should be considered together, as one transaction, as the different parts of the same contract and agreement.

The trust declared in the writing is evidently the same that had existed prior to its date, and includes evidently the full agreement that was made originally, that all the time continued to exist between the parties until the new arrangement by which Hopkinson bought the others out and gave back a mortgage of the premises to them as their security. Taking the deed to Hopkinson and the money paid, the notes given, and the writing given back to them declaring the trust, as parts of the same transaction and as containing the whole of the arrangement between them, from the beginning, we are left in no doubt about the rights of the parties so far. And the only remaining question is, the one arising out of the sale to Hopkinson, and the mortgage back of the same premises, on the 13th day of May, 1857.

We do not understand that there is any question made but what the arrangement then made was such that whatever interest was conveyed to Hopkinson by the others, was at the same time reconveyed by him to them in mortgage. His seizin of such interest as they conveyed, was but instantaneous. To be sure they gave him no deed of any right, nor did they need to do so. He had the legal title before. Their's was the equitable, the trust estate, which did not appear of record, and which would have been unavailable to them as against a creditor of or a purchaser from said Hopkinson, without notice of the existence of such estate.

It is claimed that this written agreement does not create a trust estate in the lands; that it gives only certain equitable rights, but no present estate, so that a court of equity, upon an application of the *cestuis que trust*, could

Hopkinson *v.* Dumas.

not have decreed a conveyance of the legal title, except upon the performance of certain conditions precedent, to be performed by themselves. But without considering or discussing that point, and without stopping here to inquire what difference there would be, if any, between the trust here created and a trust estate created by deed and appearing of record, let us for the purposes of this case assume that Coffin and the others had a present equitable estate in the premises, just the same as though the deed which conveyed the premises to Hopkinson had declared the trust and given to Coffin and others an equitable estate which appeared of record, and that this equitable estate had been conveyed to Hopkinson by deed at the time when the mortgage was given back by him.

Upon this supposition, the question that arises is, where the legal and equitable estates meet in the same person, but by different conveyances, at different times, and he thereby becomes seized in fee of the whole estate, which estate merges in the other, and which draws the other after it ? Does the equitable estate merge in the legal, and the title in fee to the whole relate back to and date from the commencement of the legal estate ? If this be so, then the plaintiff takes dower in the whole premises.

But, if the opposite doctrine be true, that the legal title merges in the equitable, on becoming united in the same person, and his title in fee relates back only to and dates from the commencement of his equitable interest, then this plaintiff does not take dower in any but her husband's one fifth part of the premises, because his seizin, upon that hypothesis, was only instantaneous. It becomes necessary to ascertain which of these estates is to control the other, when they become united, in order to see which of them dower shall follow ; because, at common law, which is the law of this state in this particular, dower could not be taken in either estate alone.

A widow of a trustee shall not have dower. *Robinson* v. *Codman*, 1 Sum. 121; *Germond* v. *Jones*, 2 Hill 569; *Cooper* v. *Whitney*, 3 Hill 101; *Coster* v. *Lorillard*, 14 Wend. 314. In England there is at law no dower in a trust estate, whether the husband have himself parted with the legal title before marriage, reserving only a trust, or whether a trust estate has been directly limited to him by a third person. And the same rule applies where the husband purchases an estate in the name of a trustee who acknowledges the trust after his death. *Ray* v. *Pung*, 5 B. & Ald. 561; 2 Bl. Com. 337; 1 Hill. on Real Prop. 323. So that, so long as the legal and equitable estates remained separate, no dower could be claimed, and no inchoate right of dower could be acquired on either side.

But where both estates are united in one person, one must merge in the other, because a man can not be trustee for himself. In *Goodright* v. *Wells*, Douglass 741, the question arose as to whether, in a case of this kind, "the equity should follow the law, or draw the law after it." It was a case in which an only child inherited the legal estate in lands from his mother, and the equitable estate from his father; and, dying without issue, the estate was claimed on the one side by his legal heirs *ex parte materna*, and on the other side by those *ex parte paterna*; and it was held that the equitable estate should merge in the legal, and that both should follow the line through which the legal estate descended; the whole property in that case going to the heirs on the part of the mother.

It was there learnedly argued that, before the statute of uses, the use was considered, in most respects, as the complete ownership of the land, that the estate of the feoffee was subservient to the *cestui que use*, and that the former could do nothing to defeat the interest of the latter, unless by alienation for a valuable consideration without notice; that the statute of uses completed this subserv-

iency by consolidating the legal estate with the use, or by merging the legal estate in the equitable; and that by analogy to uses thus considered, trust estates had been and should be held to be the solid and substantial ownership of the land, and the trustee the mere instrument of conveyance; that where a party holds by two titles, the law considers him as taking by the best; that the trust estate, being the best, must control the legal estate.

But the court held otherwise, deciding that the legal estate was the better title, and that the equitable title was merged the moment the two became united in the same person; that the legal drew after it the equitable estate, and that the latter was lost in the former; so that, upon the death of the son (the person in whom both estates had been united), the estate did not again open, and that the trust could not again be revived.

Lord *Mansfield*, in delivering his opinion in the case, says: "For the moment both [estates] meet in one person, there is an end of the trust. He has the legal estate, and all the profits, by his best title. A man can not be a trustee for himself. Why should the estates open upon his death? What equity has one set of heirs more than another? He may dispose of the whole as he pleases, and if he does not, there is no room for chancery to interpose, and the rule of law must prevail." And he seems to conclude that the weight of opinion and argument is, that the legal estate must draw the trust after it.

In the same case, *Ashurst*, J., says that "where the trust and legal estates join, they shall both go according to the legal estate." *Buller*, J., also says, that "in a court of equity it has never been determined that an heir of one sort can hold as trustee for an heir of another sort. And if the question be tried in a court of law, the principle that, where two titles unite, the party shall be in of the best, prevails, and the clear fee-simple estate (the legal interest) which descends from the mother is the better

title. The trust, in this case, was merged and gone." The same principle was sustained in *Doe* v. *Patt,* Douglass 684; and afterward by Lord *Thurlow,* in *Wade* v. *Paget,* 1 Brown C. C. 364; *Phillips* v. *Bridges,* 3 Ves. 126; *Selby* v. *Alston,* 3 Ves. 339; *Nicholson* v. *Halsey,* 1 Johns. Ch. 417; *Gardner* v. *Astor,* 3 Johns. Ch. 53; Hill. on Real Prop., ch. 24, sec. 27.

Upon the principle deduced from these authorities, it would seem evident that, when the two estates were united in the plaintiff's husband, the trust estate became at once merged and lost. It was consolidated into, overshadowed by, and swallowed up in the legal estate. The law of the legal estate regulates and governs its descent and distribution, and dower must be taken by the same law.

We have considered the question as though here had been originally a trust estate, created by deed and appearing of record; and coming to the conclusion we have upon that supposition, it becomes unnecessary to inquire farther into the defendant's case, because the facts assumed by us above are at least as favorable to the defendant as any that can be made out of the agreed case, and might be found to be much more so upon investigation, though on that subject we express no opinion. And the above authorities would seem to be decisive, also, of the defendant's rights — in fact, of the rights of both parties — not only at law, but also in equity. We are, therefore, of opinion that the plaintiff must prevail in her claim for dower in the whole of the premises described in her declaration; and judgment must be rendered for the plaintiff accordingly, and for damages for detention, to be fixed according to the provisions of the case.