## STANTONS v. THOMPSON.

Where, by a release of the right of redemption, the two estates are united in the mortgage, the mortgage will be upheld as a subsisting source of title, whenever it is required by the justice of the case, or the intention of the parties.

Whether the mortgage shall be kept on foot or not depends, ordinarily, upon the intention of the parties, but in order to protect the mortgage against an intervening title, the law will uphold the mortgage, even when the parties had undertaken to discharge it, unless injustice would be done thereby.

TROVER, by J. M. & S. F. Stanton against Robert W. Thompson plaintiff in review, for a sawing machine. This is a review of the action transferred to the law term from the September trial term, 1864, and again from the January trial term, 1866. Plaintiff's evidence tended to show that the machine was made by them, and in January, 1861, set up in a saw-mill in Auburn, under an agreement with one Hutchinson who then owned the mill; that the machine should remain the property of the plaintiffs till paid for. Upon evidence, not here reported, the court ruled that the machine was so annexed to the real estate as to become a fixture, except so far as it remained personal property by virtue of this agreement. The bargain relative to the machine was originally made with Charles Thompson, brother of defendant. For some time prior to December 13th, 1860, Charles Thompson owned the mill premises subject to a mortgage to defendant. December 13th, 1860, Charles Thompson conveyed his saw-mill and land to Eugene Hutchinson, and took back a mortgage duly recorded for a large part of the purchase money, and at the same time, Charles Thompson assigned this mortgage and endorsed the notes thereby secured, to the defendant, who at the time discharged the prior mortgage from Charles Thompson to himself. When Hutchinson made the bargain for the purchase of Charles Thompson's saw-mill, it was agreed by and between Hutchinson, Charles Thompson and the plaintiffs, that Hutchinson should take the machine upon the same terms agreed on, between plaintiff and Charles Thompson. March 7th, 1861, defendant claiming that he entered to foreclose under his mortgage, took possession of the mortgaged premises and the machine in question. About April 1st, 1861, defendant gave up the possession of the premises to Hutchinson upon an agreement which was reduced to writing and signed by Hutchinson, but not signed by defendant because Hutchinson did not make the first payment required by the agreement. A copy of that agreement hereto annexed, marked "A," is a part of this case. May 9th, 1861, Hutchinson quitclaimed the saw-mill and land (the same described in the mortgage) to defendant, and defendant at the same time gave Hutchinson a writing, a copy of which hereto annexed, marked "B," is made part of this case.

The only testimony as to the negotiations which led to the execu-

tion of the quitclaim deed, came from Hutchinson and defendant. Hutchinson testified that he arranged with one Jaquith to take all his (Hutchinson's) responsibilities in reference to the saw-mill property and the machine; that afterwards defendant wanted him to quitclaim, and he did so; that he received no money, the consideration being that he should be held harmless.   Defendant testified, that at the request of Jaquith and Hutchinson he consented to let Jaquith step into Hutchinson's place; that they wanted him to give a writing to Jaquith, that he should deed to him when Jaquith paid up the amount due on the mortgage; that he (defendant) did not see how he could, while Hutchinson held the equity of redemption, and mentioned that he thought a quitclaim deed from Hutchinson to himself would answer; that he wanted counsel; that they all went to a lawyer; that the lawyer thought a quitclaim would be the proper course; that all agreed to it, and the writings were signed soon after; that he thought he gave to Jaquith a contract similar to the contract of April 1st with Hutchinson (hereto annexed marked "A";) that he received no other consideration for the quitclaim deed, than he had above stated; and that he still holds the notes originally given by Hutchinson December 13th, 1860, which were secured by the mortgage of that date.   The court, feeling bound to rule in accordance with a previous decision in this case, instructed the jury, in substance: that if the mortgage and quitclaim deed alone were considered, and the question decided upon those two papers, it must be understood that defendant by taking the deed, received the premises conveyed as part or entire payment of the mortgage debt, and the mortgage must now be considered as merged or discharged by payment, and that defendant's only title to the land and consequently his only title to the machine at this time is under the deed, and that if nothing appeared to show a contrary intention, it must be understood that the deed was so received and the mortgage thus merged.   But the jury were further instructed, that it was a question of fact for them whether the parties did or did not entertain intentions contrary to those which would be presumed from the form of the papers, and that if they found that it was not the intention of the parties to merge the mortgage in the quitclaim deed, but that the intention was to confirm the title under the mortgage, to keep the mortgage on foot as part of the title conveyed, this defendant still held the premises under the mortgage. Among other things the jury were further instructed, that if defendant did not hold under the mortgage, but under the quitclaim deed only, he was liable for the value of the machines (after demand and refusal), if at or before he took the quitclaim deed, he knew that by the bargain with plaintiffs, the machine was to remain the property of plaintiffs till paid for, and knew that it had not been paid for; and they were further instructed that if the facts known to defendant, were such as would induce a reasonable man to make inquiry as to the ownership of the machine, and he failed to make inquiry, he would be chargeable with notice of all such facts, as he might have learned by reasonable inquiry.   To the above instructions defendant excepted..

Defendant requested the court to rule that the mortgage was not merged in the quitclaim deed, which the court in view of the previous decision in this case, declined to do. Verdict for plaintiffs, which defendant moves to set aside.

It was ordered that the questions arising upon the foregoing, case be reserved and assigned to the determination of the court, at the next law term.

"A"

"Memoranda of an agreement made and concluded by and between Robert W. Thompson of Derry in the County of Rockingham and State of New Hampshire of the one part and Eugene Hutchinson of Milford in the County of Hillsborough in said state of the other part.

The said Thompson in consideration of the agreements hereinafter contained agrees to let Eugene Hutchinson have the possession of all the premises, mill and mill fixtures described in the deed of mortgage Eugene Hutchinson to Charles Thompson dated Dec. 13th 1860, recorded in Rockingham Records Lib. 389, Fol. 282, and by the said Charles Thompson assigned to said Robert W. Thompson so long as the said Eugene Hutchinson shall pay the rents hereinafter mentioned or said mortgage be discharged. And in consideration thereof, the said Hutchinson agrees to pay the said Robert W. Thompson the sum of seventy-five dollars per month for the first year, commencing on the first day of April, A. D. 1861. After the first year the said Hutchinson agrees to pay the said Thompson the sum of four hundred dollars per annum rent for said premises until the mortgage is extinguished. The payment of rents to be made for the first year, on the first day of each and every month; the first payment to be made on the first day of April instant. After the first year said payments are to be made on the first days of October and April, annually, beginning to make said payments in October, 1862. Said payments to be made at the days above named, either in cash, or in good approved bankable notes. And it is agreed by the parties that each and all of the payments for rent above named, shall be applied to the payment of the above mentioned mortgage, and that when the same shall have been paid, said mortgage shall be discharged. And that if the said Hutchinson shall fail to comply with the payments above mentioned, at the times named, then the said Thompson may peaceably enter said premises and expel the said Hutchinson at his pleasure. In witness whereof, we have unto interchangeably set our hands and seals, this first day of April, A. D. 1861.

Signed, sealed and delivered in presence of            , EUGENE HUTCHINSON."   {seal}

"B"

"Whereas, on the 13th day of December, A. D. 1860, Eugene Hutchinson mortgaged certain lands with the buildings thereon, to one Charles Thompson, by his deed of that date, recorded in Rockingham Records, Lib. 389, Fol. 282, to secure the payment of two

thousand and fifty dollars, and whereas, said Charles Thompson assigned the said mortgage to me as appears by his assignment, recorded in Rockingham Records, Lib. 388, Fol. 294, together with the debt thereby secured, and whereas the said Eugene Hutchinson has this day quitclaimed all his right, title and interest in said mortgaged premises to . . . . . . . .  Now I in consideration thereof do hereby agree that I, my heirs and assigns will rely solely for the payment of the notes described in said mortgage upon the land described therein, and that neither I nor my heirs or assigns shall or will call upon said Hutchinson personally for the payment of said notes.   In witness whereof, I have hereunto set my hand and seal this 9th day of May A. D. 1861.

R. W. THOMPSON.   { seal }

Signed, sealed and delivered in presence of

G. C. BARTLETT."

*I. W. Smith G. Y. Sawyer, and Sawyer, Jr.*, for plaintiffs.

*Morrison & Stanley, and Lord & Sulloway*, for defendant.

BELLOWS, C. J.   The instructions to the jury were apparently based upon the opinion of the whole court, in a case made upon the trial of this cause in 1854, and it becomes important to ascertain what that opinion was, and whether it must furnish the rule for this case ; for, according to the decision in *Bell* v. *Woodward*, 47 N. H. 542, the opinion formerly given may be the law for this case, so far as it applies, in all its stages.

This decision in *Bell* v. *Woodward*, is sustained by many decided cases, some of which put it upon the ground that a decision of the highest court in the same cause must be regarded as *res adjudicata*. Whether all the circumstances that made the former decision obligatory in *Bell* v. *Woodward*, it is not necessary at present to inquire.

What, then, was the opinion given in the former case.   It was decided that by the taking of the quitclaim, and nothing appearing to show a contrary intention, it must be understood that defendant received the premises conveyed as part or entire payment of the mortgage debt, and the mortgage must be regarded as merged or discharged, and that the defendant's only title to the land and consequently his only title to the machines, at this time, is under this deed.

The question then is, what was settled in the former case.   The substance of that decision was that *prima facie* a mortgage must be regarded as extinguished and merged in a quitclaim deed from the mortgager, unless a different intention appears, and there are many authorities that maintain this position, and among them is *Greenough* v. *Roles*, 4 N. H. 363, and cases cited.

This decision in the former case, does not attempt to discuss or consider whether a state of facts, such as are now disclosed, would

be evidence of an intention that the mortgage should not be merged in the later title, nor is any opinion given as to the bearing of the facts then before the court on the point of intention, but the effect of the decision was simply this; that when nothing appeared but the mortgage and quitclaim, the mortgage title would be regarded *prima facie* as merged in the quitclaim, and the verdict seems to have been set aside to give an opportunity to try the question in connection with the question of notice to defendant, of the situation of the machine. Nor does it appear from the case, as then reported, that there was any evidence of an intention to keep on foot the mortgage. It is true that the case provides, that the parties may refer to an agreement between defendant and Hutchinson, but it would seem that this was the agreement of April 1, 1861, under which Hutchinson had possession of the mill; nor does it appear distinctly from the case as reported, that there was any intervening title to the sewing machine; it not being stated that defendant had any notice, before the quitclaim died; whereas the case now before us, goes upon the ground that there was such intervening title, which must prevail against the defendant, unless he can set up his mortgage as a subsisting title, the instructions of the court show this; and besides, by the agreement of May 9, 1861, the inference is strong that, although defendant was no longer to have claim on Hutchinson personally, for the payment of the mortgage debt, he was to retain the notes, to enable him to enforce his security upon the land. From this, and the fact that the notes were not given up, the argument is well nigh irresistible, that neither party intended nor understood that the mortgage title was extinguished. The decision in the former case, therefore, cannot be understood as controlling the case in its present aspects.

In the one now before us, the instructions to the jury were in accordance with the former decision, but it was also left to the jury to determine whether the parties did, or did not intend that the mortgage was extinguished and merged in the subsequent title, and the court declined to instruct the jury as requested by the defendant that the mortgage was not merged in the quitclaim deed, and to these instructions defendant excepted.

The question is, whether the instructions asked for, ought to have been given, instead of leaving it as matter of fact to the jury. As the case now stands, if defendant holds under the quitclaim and alone, then, as he had previous notice that the plaintiffs held title to the sawing machine, and that it was not to become the mortgager's property until paid for; the plaintiffs would hold it; but if defendant can be permitted to set up his mortgage as a source of title, it must cover this machine, and the defendant must prevail.

On this point, I am of the opinion, that upon such a state of facts showing a title intervening between the mortgage and quitclaim deed, it is to be presumed as matter of law, that the parties did not intend to extinguish the mortgage and that the instructions asked for, ought to have been given.

This doctrine is well established in New Hampshire, and is applied

even to cases when in point of fact, as the case then appeared to the parties, they intended to discharge the mortgage, and the notes were accordingly given up; and even when the mortgage was formally discharged. These cases are very numerous and, we think, decisive.

In *Hunt* v. *Hunt*, 14 Pick. 384, Shaw, C. J., lays down the rule thus: That to effect a merger at law, the right previously acquired, and the right subsequently acquired, in order to coalesce and merge, must be precisely co-extensive,—must be acquired and held in the same right, and there must be no right outstanding in a third person to intervene between the right held, and the right acquired. If any of these requisites are wanting, the two rights do not merge, but both may well stand together. In *Lockwood* v. *Sturtevant*, 6 Conn. 387, Hosmer, C. J., lays it down as a general rule, that when a greater and lesser estate coincide, and meet in one and the same person, without any intervening estate, the lesser estate is merged or drowned in the greater. Chan. Kent in 4th Com. *103–4, lays it down, that whether there is a merger or not, depends on the intention of the person in whom the estates are united, if it be a just and fair intention; and if he be not competent as by reason of infancy or lunacy to make an election, or if it be for his interest to keep the equitable estate on foot, the law will not imply an intention to merge. In 1 Wash. on Real Prop. 564, a similar doctrine is laid down, that if it be for the interest of the holder of one of these titles that on acquiring the other, they shall be kept distinct that both may be protected, they will not merge, unless the contrary intent appears from the language of the deed, and that there will be no merger unless the law finds such to be the intention of the person in whom the titles meet, expressly declared or clearly to be inferred from such merger being to his advantage. So it is substantially laid down in 2 Story's Eq. § 1035 b. See notes and cases. In *James* v. *Johnson*, 6 Johns. Ch. Rep. 423–4, it is held that generally when a legal and equitable estate are united in the same person, the equitable will merge in the other, except in special cases. Generally there is no use, in keeping them distinct, and to keep a charge on one's own estate; but when an intention to keep it up is shown, or something beneficial or useful requires it to be presumed, it may be. In *Thompson* v. *Chandler*, 7 Green. 381, it is held that if the purchaser of an equity of redemption take an assignment of the mortgage, it shall not operate to extinguish it, if it be the interest of the assignee to uphold it. So in *Holden* v. *Pike*, 24 Me. 437, and *Hatch* v. *Kimball*, 14 Me. 9, *Simonton* v. *Gray*, 34 Me. 50. In *Freeman* v. *Paul*, 3 Green. 260, where both estates were united in the same person, it was held that whether they merged, would depend on the intention, and if none was expressed, it would turn upon the point whether it was for the advantage of the mortgagee to uphold it, and thus stress was put upon the fact that there was no intervening incumbrance. In *Gibson* v. *Crehore*, 3 Pick. 475, it is held that when a purchaser of a right to redeem takes an assignment, this shall

or shall not operate as an extinguishment of the mortgage, according as the interest of the party taking the assignment may be, and according to the real interest of the parties, and it is said that this doctrine is decisively settled in the English court of chancery and in England, and the same doctrine is affirmed in *Gibson* v. *Crehore*, 5 Pick. 146. So it is in *Lord* v. *Lane & al.*, 8 Met. 517; and *Savage* v. *Hall*, 363. The New York doctrine is the same. *James* v. *Morey*, 2 Cow. 285, and cases, *Gardiner* v. *Astor*, 3 Johns. Ch. 53. Also in Connecticut, *Baldwin* v. *Norton*, 2 Conn. 161; and *Lockwood* v. *Sturtevant*, 6 Conn. 387, before cited; where there was a mortgage of land and a release of the equity and a giving up of the mortgage notes, it was held that it could not be presumed that the parties intended to extinguish the mortgage title, as this is usually with covenants of warranty, while the release is without such covenants, and that was held to be a good reason for holding the mortgage title not extinguished; otherwise in case of a failure of title, the party might be without remedy, and, therefore, the mortgagee was allowed to recover on the covenants in the mortgage deed. In Vermont, the release by mortgager to mortgagee in satisfaction of the debt, does not extinguish the mortgage, when it would operate to the injury of the mortgager. *Marshall* v. *Ward & al.*, 5 Vt. 254; and *Walker & al.* v. *Barker & al.*, 28 Vt. 710, where the doctrine is very fully recognized and considered. In *Forbes* v. *Moffatt*, 18 Ves. 391, the question is said to be, whether the party in whom there is a union of the equitable and legal estates, intends to keep up the charge. Generally it is of no use to him to do so; but he may elect to keep it up. If he do nothing showing such election, the question will be upon the presumption of law under the circumstances, and if it be found that if it is for his interest to keep up the charge, it will be presumed he intended to keep it up. The master of the rolls, Sir William Grant said, that in looking into all the cases where the charge was held to merge, he finds no case where it was not perfectly indifferent whether it did or did not. The doctrine of this case is fully recognized in *Gardiner* v. *Astor*, 3 Johns. Ch. 53. The same doctrine is laid down in 1 Mad. Ch. 540.

There are cases which hold, that when a mortgagor releases to a mortgagee, it shall be deemed to be merely an extinguishment of the right of redemption. *Dexter* v. *Harris*, 2 Mason, C. C. Rep. 531. In delivering this opinion, Judge Story holds that at law, by the mortgage, a conditional estate, in fee simple, passed to the mortgagee, and the only operation of the conveyance by one having the equity of redemption, would be to extinguish that interest, and thus to remove the condition.

It was not the drowning of a lesser estate, for the estate was already a fee simple. This is certainly more in accordance with the ordinary understanding upon the subject, which looks upon such a release in general as merely a foreclosure of the mortgage, and not an extinguishment of it, and that is shown by the fact that these releases are usually without warranty of title. If we look then to

the intention of the parties, in determining whether there is a merger of the mortgage title or not, we should ordinarily find, that there was no intention to extinguish the mortgage title, but to make it absolute, as by any other mode of foreclosure, and thus to apply the property pledged to the satisfaction of the debt.

Without, however, relying upon this position, we think it may be deduced from the authorities quoted, that when the estates of the mortgagee and mortgager are united in the former, he has in equity an election to keep the mortgage title on foot, and that wherever it is for his interest by reason of some intervening title or other cause, that the mortgage should be upheld as a source of title, it will not at law be regarded as merged.

This is based upon the presumption as matter of law, that the party must have intended to keep on foot his mortgage title, when it was essential to his security against an intervening title, or for other purposes of security; and it is no matter whether the parties through ignorance of such intervening title, or through inadvertence, actually discharged the mortgage, and canceled the notes, and really intended to extinguish them; still on its being made to appear that such intervening title existed, the law would presume conclusively that the mortgagee could not have intended to postpone his mortgage to the subsequent title. Such cases are very numerous in our own state, and need not be cited. Indeed it may properly be said that when there is an intervening estate, there can be no merger from the mere union of the equitable and legal estates, as was held in *Hunt* v. *Hunt*, 14 Pick. 384, and *Lockwood* v. *Sturtevant*, 6 Conn. 387, before cited. In fact, the doctrine of merger, springs from the fact that when the entire equitable and legal estates are united in the same person, there can be no occasion to keep them distinct, for ordinarily it could be of no use to the owner to keep up a charge upon an estate of which he was seized in fee simple, but if there is an outstanding, intervening title, the foundation for the merger does not exist, and as matter of law, it is so declared.

Of course cases might be conceived, when the purpose to extinguish the mortgage, notwithstanding an intervening title was clearly manifested, as when the very object was to postpone the first to a second mortgage the mortgager was willing to surrender his interest to effect that object. In such a case it would be unjust to the mortgager to uphold the first mortgage, and it would not be done, but in ordinary cases it would be just to allow the person in whom the two estates were united, to keep on foot his mortgage as security against an intervening title, in respect to which, he had come under no obligations either to the holder or the mortgager.

In our own state, the decisions are in accordance with the doctrines of the cases cited, and show that the rules of courts of equity on this subject have been adopted here at law. *Robinson* v. *Leavitt*, 7 N. H. 73, where the subject is much discussed, and Richardson, C. J., in a dissenting opinion says, that it is now the settled rule of law as well as of equity, that a mortgage is never to be considered as

discharged, so long as, it is necessary to consider it otherwise, in order to give those who have the estate of the mortgagee, the full enjoyment of that estate. *Hutchins* v. *Carleton,* 19 N. H. 489 ; *Johnson* v. *Elliott,* 26 N. H. 69 ; *Heath* v. *West,* 26 N. H. 191. In *Bell* v. *Woodward,* 34 N. H. 90, which was a writ of entry, Perley, C. J., says that the rule deducible from these authorities would seem to be this : When the whole title which one acquires in land consists of an equity of redemption and of a mortgage, the mortgage will be kept on foot and held as security, over the land, or will be regarded as extinguished, as may be required by the justice of the case and the intention of the parties, the intention of the parties being the governing principle, when that intention is consistent with the justice of the case, and he says the equitable rules are applied in writs of entry, when it is used to enforce a mortgage.

In applying this rule, he says if the defendant is not allowed to set up this prior mortgage against the subsequent mortgage of the plaintiffs', he and Mary Hale (the party from which he derived the mortgage), contrary to their interest, contrary to what must be presumed to have been their intention, will have paid the amount of the mortgage, not for their own benefit, but for the benefit of the subsequent mortgagee. In *Hinds* v. *Ballou,* 44 N. H. 620 ; it was held by Bartlett, J. that the payment of money to redeem, will operate as a discharge, or as an assignment substituting him in the place of the mortgagee, as may best serve the purposes of justice and as it would have been manifestly for Lewis' interest to treat the transactions as an assignment, such an intention is to be presumed, as it would not be inconsistent with the justice of the case, and as no contrary intent is expressed or necessarily implied. Similar remarks are made by Nesmith, J. in *Moore* v. *Bascom,* 44 N. H. 215 ; and see *Wilson* v. *Kimball,* 27 N. H. 300.

Upon these views, we think the instructions asked for ought to have been given. It is not distinctly stated in the case that there was an intervening title to the machine, but it is apparent from the whole case, and especially from the instructions of the court, that as in the former cases, by reason of a notice to defendant before the quitclaim deed, his title under that, to the machine was not good, when under the mortgage, if still subsisting it would be good.

The case then, is one where a title to the machinery intervened between the mortgage and quitclaim deed, and upon the authorities, the jury should have been told, that the mortgage was not merged in the quitclaim deed.

It is not a question of fact for the jury as to the intention, but a conclusive presumption of law, arising from the uncontroverted fact of an intervening title.

*The verdict must be set aside.*